

**JILLIAN L. McNEIL**
*BALESTRIERE FARIELLO*
225 Broadway, 29th Floor
New York, New York 10007
T: +1-646-912-8463
F: +1-212-208-2613
jillian.mcneil@balestrierefariello.com
www.balestrierefariello.com

January 7, 2019

<u>**VIA ECF**</u>
Honorable Andrew L. Carter Jr.
United States District Court
40 Foley Square, Room 1306
New York, New York 10007

> Re:  *White Lilly, LLC et al. v. Balestriere PLLC et al.;* Index No.: 18-cv-12404
> Proposed Motion to Stay, Compel, and, in alternative, to Dismiss

Judge Carter:

I represent Balestriere PLLC, Balestriere Fariello (the "Firm"), and John Balestriere (collectively, the "BF Parties") and request a pre-motion conference pursuant to the Court's Individual Practice Rule 2(A) regarding the BF Parties' proposed motion to compel arbitration and stay or dismiss the proceedings under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), or, in the alternative, to dismiss the claims pursuant to Rule 12(b)(6).[1]

Jonathan Bernstein—an attorney admitted to practice in New York for over forty years— seeks to misuse this Court. His filing of a frivolous pleading (Dkt. No. 1, the "Frivolous Complaint")[2] is a desperate attempt to obtain advantage in a fee dispute (already pending, as agreed, in a four-month arbitration before the American Arbitration Association ("AAA"))— where he personally owes the Firm over $14 million. The Firm represented Bernstein and others, also liable to the Firm, for close to four years in multiple actions in state court, federal court, and arbitration (the "Underlying Actions"). When Bernstein and his co-clients sought out and hired the Firm, they had a $50 million liability. After thousands of hours of loyal service, the Firm obtained a resolution where no clients had any liability and, instead, together received cash, real estate, and other items valued at approximately $25 million.

### **The BF Parties' Proposed Motion to Dismiss**

While this dispute belongs in arbitration as detailed further below, if it remains before this Court, the BF Parties respectfully seek permission to move to dismiss Bernstein's claims pursuant to Rule 12(b)(6). All of Bernstein's claims are either inadequately pleaded, improperly duplicative, or, worst of all, implausible as a matter of law as they are based on allegations completely undermined by documents, generally those drafted by Bernstein, or his

---

[1] The BF Parties are aware of the Order to Show Cause issued by the Court today. The BF Parties do not intend for this letter to form a response, and shall separately respond on the schedule directed by the Court in its Order.
[2] The BF Parties shall serve Bernstein's counsel with a Rule 11 safe harbor letter today.

correspondence. *F.D.I.C. v. U.S. Mortg. Corp.*, 132 F.Supp. 3d 369, 385-86 (E.D.N.Y. 2015) (motion to dismiss granted when allegations found to be implausible based on documents).

For example, Bernstein asserts that the BF Parties misappropriated escrowed funds. Yet, the engagement agreements which Bernstein, a former real estate partner at Pryor Cashman LLP, personally negotiated for three months and executed in 2014 specifically provided that Bernstein "agree[d] that if [Bernstein and his co-clients] are late in making any monthly payments, or the Firm has incurred hourly or any other fees or expenses, and our work on the matter is completed, the Firm *shall be permitted* to take the current monthly fee payment or any other fees or expenses due *from these funds* held in trust." (November 21, 2014, Engagement Agreement (Exhibit A, the "Engagement Agreement"), 8; March 17, 2015 Engagement Agreement (Exhibit B, the "Operative Engagement Agreement"), 8 (emphasis added) (collectively, the "Engagement Agreements").) Indeed, when negotiating the Engagement Agreements, Bernstein agreed that this was common practice, and even represented the same thing to the general counsel for the adversary in the Underlying Actions in 2017 when the issue of the Firm's right to fees arose.

This is exactly what happened in March 2018. Bernstein negotiated and executed the settlement documents in the Underlying Actions in January 2018. By March 2018, Bernstein's co-clients, Juan Diaz Rivera and his company Farallon, transferred funds to the Firm consistent with the Engagement Agreements' provision that, "The Firm *shall receive* the actual payment for *any* Recovery or portion of the Recovery into the Firm's trust account." (Engagement Agreement, 8; Operative Engagement Agreement, 8) (emphasis added).) By that time, Bernstein and his co-client together owed the Firm over $2 million in overdue hourly fees and expenses, not including the additional amounts owed as the Firm's Success Fee (of approximately $8 million, along with, now, an Engagement Agreement provided "misconduct penalty" of over $5 million). The Firm applied the funds received towards past due invoices as per the Engagement Agreements.

The Firm did not hide this payment. Instead, the Firm duly noted the application of the funds received to the amounts then owed by Bernstein and his co-clients in an invoice the Firm sent Bernstein and his co-clients on April 11, 2018. Neither Bernstein nor any of his co-clients complained about this payment—since there was nothing to complain about—just as no client ever disputed any of the 40 monthly invoices sent between 2014 until 2018. A few weeks after the Firm sent this invoice, when Bernstein and Diaz Rivera were offering payment plans to pay their debt to the Firm, on May 2, 2018, Bernstein noted that the Firm deserved "to get the money [for owed fees] . . . . We made a deal, we papered it, and it's all got to come in and it has to happen right away." Diaz Rivera agreed: on June 13, 2018, Diaz Rivera discussed a payment plan with the Firm of a "combination of cash and assets, [that would] get [the Firm] 100% whole." Yet, by July 2018, Bernstein and Diaz Rivera stopped responding to the Firm's inquiries regarding their debts to the Firm, requiring the Firm to initiate arbitration on September 13, 2018.

Documents also undermine Bernstein's fraud claims. Bernstein alleges he was fraudulently induced into the Engagement Agreements by the BF Parties' (undocumented) purported assertion that the Underlying Actions were a "slam dunk." (an assertion contradicted by the Firm's statement in the Engagement Agreements that "**we cannot and do not guarantee or represent that we can obtain any particular result, or that the amount of fees or costs**


**shall be a certain amount or less.**" (Engagement Agreement, 9; Operative Engagement Agreement, 9) (emphasis in original).) Indeed, when Bernstein decided to work with his co-clients, Bernstein drafted the November 5, 2014, agreement with his co-clients (Exhibit C, the "Capitalization Agreement"), in which Bernstein admits he relied not on the representations of the BF Parties, but on his co-clients to decide to invest and participate in the Underlying Actions. (Capitalization Agreement, ¶ 7(c)) (Bernstein acknowledging that he decided to direct and invest in Diaz Rivera's litigation based on "*Farallon's [not the Firm's]* provision of true, correct, and complete information regarding the project" including correspondence, trust documents, amendments, promissory notes, "and a trove of other related information") (emphasis added.) Bernstein drafted the Capitalization Agreement (to which the Firm was not a party) to describe the relationship between him, Diaz Rivera, and related entities, and as a means for Bernstein to share in both the responsibility for paying for and directing the Underlying Actions and sharing in the benefits of those actions, if any. Bernstein's written agreements eviscerate his fraud claims.

Bernstein's agreements and written correspondence also undermine his misrepresentations that the Firm, for four years, "litigat[ed] multiple cases with a staggering level of incompetence." (Frivolous Complaint, 2.) Bernstein conceals from the Court that documents show he directed all litigation, identifying himself as the "litigation director" of the Underlying Actions (hundreds of emails verify this) (Capitalization Agreement, ¶ 5.) Additionally, in provisions Bernstein added to the Engagement Agreements, Bernstein is identified as the "exclusive authorized client representative in the United States with *sole client decision-making authority* over strategic matters related to this contemplated litigation." (Engagement Agreement, 15; Operative Engagement Agreement, 15) (emphasis added).) Bernstein also hides from the Court the fact that after he sought out the Firm to represent him and his co-clients in the Underlying Actions starting in 2014, documents show that he personally hired the Firm *four more times* between 2014 and 2018: first, to defend him and his co-clients (successfully) when they fell behind in payments to a discovery vendor; second, to defend Bernstein (successfully) when the adversary in the Underlying Actions sought to sue Bernstein personally; a third time when Bernstein was threatened with litigation by a lawyer at his own firm; and then, finally, a fourth time in connection with another expected employee dispute.

### The BF Parties' Proposed Motion to Compel Arbitration

But before the Court even reaches a decision on any motion to dismiss, Bernstein must be compelled to arbitrate his claims. Under the FAA an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In the Engagement Agreements, Bernstein personally agreed that "any dispute or claim between the parties . . . shall be settled by arbitration administered by the ["AAA"] . . . in accordance with its Commercial Arbitration Rules." (Engagement Agreement, 15; Operative Engagement Agreement, 15.) Indeed, under those rules, Bernstein agreed that the issue of arbitrability is in fact a decision for the arbitrator. *See Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, (2d Cir. 2005) (arbitration provision finding AAA Commercial Arbitration Rules to be "clear and unmistakable evidence" that parties intended to delegate the issue of arbitrability to the arbitrator, not the courts). This dispute belongs in arbitration.



As will be further detailed in the BF Parties' motion for preliminary injunction opposition, Bernstein's arguments to the contrary fail. First, documents upend Bernstein's misrepresentation that he signed the Engagement Agreements on behalf of his single-purpose entity White Lilly, LLC ("White Lilly"). Indeed, the Engagement Letters were addressed to *and signed only by* Bernstein in his personal capacity (Engagement Agreement, 1, 16; Amended Engagement Agreement, 1, 16.). Second, the name "White Lilly" does not appear *even once* in either document (*id.*), and only appears in an addendum from a year later that was directed to Diaz Rivera after he fell behind in their payment obligations and was *not* signed by Bernstein. (February 24, 2016, Addendum to the Operative Engagement Agreement (Exhibit D, the "Addendum").)

Second, Bernstein's misleading assertion that he was not a Firm client by pretending he was a mere "litigation funder" is undermined by dozens of documents. Bank records show that Bernstein made most fee payments from his personal account (indeed, not only was there apparently not a White Lilly bank account when the Underlying Actions began, White Lilly never had any employees, nor website, nor independent address). The Capitalization Agreement calls Bernstein "the litigation director." and the Engagement Agreements identify him as the "exclusive authorized client representative in the United States with sole client decision-making authority." (Engagement Agreement, 14; Amended Engagement Agreement, 14.) Bernstein was not a litigation funder. He was a litigation client, who agreed to arbitrate any dispute with the Firm, warranting an order compelling Bernstein to bring his claims in arbitration as he agreed.

Respectfully submitted,

Jillian L. McNeil

cc:     Counsel of Record

Encs.   Exhibit A, Engagement Agreement, November 21, 2014
        Exhibit B, Operative Engagement Agreement, March 17, 2015
        Exhibit C, Capitalization Agreement, November 5, 2014
        Exhibit D, Addendum, February 24, 2016[3]

---

[3] Each of these exhibits is attached to the Bernstein Declaration in Support of Motion for Preliminary Injunciton, Exhibits 4, 5, 6, and 3, respectively. All redactions were done by the Bernstein Parties.

4

# Exhibit A



BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
T: +1-212-374-5400
F: +1-212-208-2613
info@balestrierefariello.com
www.balestrierefariello.com

November 20, 2014

**VIA E-MAIL**
Juan Díaz Rivera
juan@pedregal.com

Jon Bernstein
jon@bernsteincorp.com

Desarrolladora Farallón, S. de R.L. de C.V.
Camino de La Plaza 145
Cabo San Lucas, BCS, Mexico 23450

     Re:   Engagement of services of Balestriere Fariello ("the Firm") for your matter against ▮▮▮▮▮▮ ("▮▮▮▮"), and related entities and individuals (the "matter").

Dear Jon and Juan:

     This letter confirms the discussions we have had regarding the Firm's representation of Desarrolladora Farallón, S. de R.L. de C.V. ("you," the "Company" or the "Client") ("you," "your," "yours," "his," "her," "its," or similar pronoun means the party or parties who seeks representation) in your matter. You agree that, consistent with any applicable ethical rules, the Firm has the <u>exclusive</u> right to represent you in connection with this matter and pursue any claims asserted or to be asserted by you in or related to this matter. The Firm's services in this matter will end, unless otherwise agreed upon in a written document signed by us, when there is a final agreement, settlement, decision, or a judgment.

     Please take care in reviewing this letter and ask us any questions of any kind you have.

     As we can discuss at any time, <u>we cannot and do not guarantee or represent that we can obtain any particular result, or that the amount of fees or costs or the length of the matter shall be a certain amount</u>. This is particularly so here as, based on what you have shared with us, we understand that there are years of history between the parties prior to our engagement, the adversaries appear to be well resourced and aggressive, and the adversaries almost certainly shall take the position that they are not simply postured as defendants but also as plaintiffs to whom you owe money and who have been wronged by you. This litigation circumstance, as well as the inherent risk in litigation and the way different courts manage litigation, means that at many times the pace (and, thus, cost) of the litigation will not solely be within our discretion.

1

REDACTED



You have asked for us to provide you with our best estimate of a budget notwithstanding our inability to guarantee or represent the length of the matter or the complete scope of work necessary to represent your interests. Consistent with the above referenced caveats, we provide the following good faith <u>estimates of fees and costs for specific time periods, assuming that the matter is still active (i.e., it has not been resolved by settlement or otherwise) during the time period noted.</u>

- February 15, 2015 – with preliminary injunction – $350,000 to $450,000
- February 15, 2015 – without injunction – $250,000 to $300,000
- February 16, 2015 through May 15, 2015 – $250,000 to $350,000
- May 16, 2015 through August 15, 2015 – $200,000 to $400,000
- August 16, 2015 through November 15, 2015 – $200,000 to $350,000
- November 16, 2016 through May 15, 2016 – $300,000 to $600,000

Upon your request, we shall provide a further estimated budget by Wednesday, January 25, 2015, and at any time, upon reasonable notice, while we represent you during the matter.

### ENGAGEMENT LETTER AND FEE AGREEMENT ("Agreement")

<u>FEES, EXPENSES, BILLING, AND PAYMENT</u>

The representation of you by this or any other lawyer with which we choose to coordinate our efforts in this matter is on the basis described below, including the payment of a contingency fee (the "Success Fee").

<u>Success or Share of the Recovery Fee</u>. The Firm will receive a Success Fee based on the gross recovered amount, whether such recovery comes about by reason of judgment, settlement of any kind whatsoever, court order or any other mechanism, inclusive of all pre- and post-judgment interest, computed as of the date of payment (the "Recovery"). The Success Fee shall not be limited by any taxes, liens, assessments, charges, or fees due by you or any other party and which shall be paid from the Recovery. To the extent applicable if there is a Non-Cash Recovery as defined below, "gross recovered amount" is limited as described in that section.

<u>Success Fee</u>. The Success Fee shall be capped and shall not be more than four times the difference between what the Firm and the Storch Firm (as defined below) combined would have billed at their Standard Hourly Rates and the actual payment in fees which you pay the Firm and/or the Storch Firm combined on an ongoing basis as the matter proceeds (such maximum success fee called "the Success Fee Cap.").

By way of example, if during the course of the matter you pay the Firm and Storch combined $1,500,000 in out of pocket fees (not including expenses), but at the Standard Hourly Rates the total fees billed would have been $4,500,000, then the Success Fee shall be capped at $12,000,000 (four times the difference of $3,000,000 in this example).

2



Subject to this Success Fee Cap, the Success Fee shall be determined as a percentage of the Recovery on the following schedule.

- 27.5% of the entire Recovery (however and whenever recovered) if the case is resolved after the filing of any documents of any kind with a court or other dispute resolution body, but before the beginning of any discovery of any kind,

- 30% of the entire Recovery (however and whenever recovered) after any discovery of any kind whatsoever has begun, and

- 35% of the entire Recovery (however recovered) at the trial stage. "At the trial stage" is defined as the time after we have taken any steps of any kind actually preparing for trial or arbitration and either (1) upon the completion of general discovery, including, but not limited to, once a settlement conference has been scheduled at or near the end of discovery, or (2) if the case is scheduled for a specific trial date or arbitration date.

You agree that the Firm is choosing to share the risk with you in this litigation based not merely on our due diligence, but on your representations regarding the merits of your claims and the ability to obtain a Recovery if we are successful in prosecution of any affirmative claims you have.

If there is no Recovery then you shall have no obligation to pay any fees beyond those which you have <u>incurred</u> on a discounted hourly basis for the full duration of the engagement.

<u>You may have a tax liability as a result of the Recovery and should immediately discuss how to address such liability, if any, with your accountant or other tax adviser.</u> We do not have the requisite qualifications to provide you with advice regarding any tax liability which may arise as a result of the Recovery, but shall assist you however you reasonably request in finding such a tax adviser. IRS Circular 230 Disclosure: As required by federal law and to ensure compliance with requirements imposed by the Internal Revenue Service, please be advised that any U.S. federal tax advice is not intended to be used or relied upon, and cannot be used or relied upon, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

If, in any action, outside of the matter where we are representing you, you are ordered or agree to pay any money, or provide any other service or thing of value of any kind, from any source, as a party, this shall not act to net, reduce, or offset either the Success Fee. As a simple example, if we obtain a recovery for you of $1,000.00, but you also, in another action or dispute, either agree to or are ordered as part of a judgment or any other order, pay $250.00 to another party, our Success Fee shall still be based on the recovery of $1,000.00, which we obtain for you, and not reduced by the amount ($250.00) you are ordered to pay in the other matter.

The Recovery is defined as a cash recovery or <u>anything</u> of value, or <u>any other service or thing of value</u> of any kind, from any source, including, but not limited to, the following:



a) any transfer, purchase, or purchase rights of any assets, licensing agreements, or any business transactions or goodwill which have any value of any kind;

b) restitution from any source, including a government source, if our Firm has, prior to the payment of restitution, had any contact of any kind with the source or government body including, but not limited to, any communications or negotiations with the source; or

c) reduction of any amount of any debt, taxes, liens, or any financing obligations of any kind;

NON-CASH RECOVERY

It may be necessary for Success Fee purposes to determine the valuation of a non-cash recovery (including, but not limited to, a resolution whereby adversarial parties agree to convey to you their shares in the Property, or forgive debt of the Property which exists prior to the resolution, or both)("Non-Cash Recovery").

Negotiation in Good Faith Regarding Valuation of Non-Cash Recovery. If there is a Non-Cash Recovery which is part of any resolution of the matter, you and the Firm and the Storch Firm shall within 30 days of resolution of the matter negotiate with one another in good faith in attempting to arrive at an agreement of a cash equivalent of the Non-Cash Recovery for Success Fee purposes.

Value of Non-Cash Recovery. The Non-Cash Recovery shall be your increase in net equity in the Property post-resolution of the matter as compared to immediately pre-resolution of the matter. To determine this amount, you and the Firm and the Storch Firm agree that certain facts may be relevant:

- If shares in the Property are conveyed to you as part of any resolution of the matter, such conveyance shall be considered part of the Non-Cash Recovery.

- If debt on the Property is reduced as part of any resolution of the matter, the portion of such debt reduction which accrues to your benefit shall be considered part of the Non-Cash Recovery.

- If you must make any payments to any adversarial party solely for the purposes of resolution, or incur debt on the Property solely for the purposes of resolution (but not including for payment of the Success Fee), such payments or increased debt which you incur shall reduce the value of the Non-Cash Recovery.

Property Valuation Which May Be Necessary to Determine Value of Non-Cash Recovery. In order to determine the value of the Non-Cash Recovery, it may be necessary to determine the value of the Property.

As a guideline for determination of the value of the Property for Success Fee purposes, the parties agree that the following formula shall apply:

4



The net operating income for the Property for the 12 months prior to obtaining a resolution ("NOI") shall be multiplied by a fraction, the numerator of which shall be 100, and the denominator of which shall be the Accepted Cap Rate, less any debt existing on the Property

For purposes of illustration, if

1. The NOI is $15MM
2. The Accepted Cap Rate is 5.5
3. the interest conveyed to you pursuant to the resolution of the matter is 40% of the Property,
4. debt forgiven pursuant to the resolution of the matter is $130MM,
5. pre- resolution you owned 60% of the property and
6. you must pay $100MM (either by incurring new debt on the property or otherwise) the value of the Non-Cash Recovery would be:

- $(($15MM x (100 / 5.5)) x .40) + ($130MM x .60) - $100MM = **$87.091MM**

Dispute Regarding Valuation of Non-Cash Recovery Subject to Arbitration. If you and the Firm and the Storch Firm cannot come to an agreement regarding a Success Fee based on any Non-Cash Recovery after you and the Firm and the Storch Firm have negotiated for at least 60 days, then such controversy relating to the Success Fee based on the Non-Cash Recovery shall be settled by arbitration administered by the American Arbitration Association, in New York before one arbitrator, in accordance with its Commercial Arbitration Rules ("Arbitration Rules"), and judgment on the award rendered by the arbitration may be entered in any court having jurisdiction thereof.

Notwithstanding any provision in those Arbitration Rules, each party shall pay its own professional service fees (including attorney's fees) and costs related to the arbitration, and New York law shall apply to the extent possible, including regarding any claims or defenses.

Hourly fees in lieu of Success Fee; Non-Cash Recovery. In the event of any Recovery, the Firm and Storch shall, individually and severally, in their sole and absolute discretion, have the right to elect in lieu of a Success Fee, either: (i) a cash payment in the amount of the total undiscounted fees for the duration of the engagement based on the Standard Hourly Rates of the attorneys and personnel who worked on the Matter, as those rates may have evolved over time ("Total Undiscounted Fees"); or (ii) cash paid as a Success Fee based on the increased net equity to you from a Non-Cash Recovery.

## Hourly Fees

Reduced Hourly Rates. You agree to pay us by the hour at a reduced rate, paying us a fraction of our Standard Hourly Rates, as such rates are defined and described below.

- John Balestriere, and any other partner shall bill at $300.00 / hour, a 67% discount.

5


- Jillian McNeil or any primary non-partner attorney shall bill at $217.00/hour, a 67% discount.
- All other attorneys shall bill at $137.00/hour, a 67% discount.
- All analysts shall bill at $95.00/hour, a 68% discount.

In addition, Adina G. Storch ("Storch"), of the Law Offices of Adina G. Storch, PLLC ("Storch Firm") is hereby retained as a litigation consultant, pursuant to the terms set forth below. Storch's work shall be billed at an hourly discounted rate of $300, commensurate with the Firm's discounted partner rate above. Storch's standard rates, for the purposes of this engagement and if ever applicable, shall be the same as John Balestriere's.

Standard Hourly Rates. When billing by the hour, no matter what the hourly rate, the Firm charges for **all time spent on a matter** by any attorney (including partners, of counsel, and associates), employee (including non-admitted law school graduates and analysts), or affiliate (including law student apprentices and undergraduate apprentices).

When we bill by the hour in any fashion, we do require that clients keep money in trust against which we bill for fees (i.e., for hours devoted to the work) and expenses (i.e., filing fees, depositions, and out of pocket expenses). We submit bills for fees and expenses generally on a monthly basis and ask that bills be paid promptly and that the trust account be promptly replenished. Firm bills shall include entries for time devoted to the matter by Storch, but there may come a time when the Storch Firm sends directly to you Storch's invoices for fees covered by this Agreement in lieu of inclusion in the Firm's invoices.

You understand that different staff members of different levels and experience will perform work on the matter. You also understand that non-lawyers will work with lawyers in providing services to you.

Such time for which we charge includes, **but is not limited to**, time devoted to the matter for the following:

- telephone calls or correspondence, including letters or electronic mail, to you, other parties, other attorneys, employees, or affiliates of the Firm;
- conferring with you, other attorneys, others at the Firm, or anyone else on a matter;
- reviewing, preparing, or organizing documents of any kind in any manner;
- legal or any other kind of research;
- any kind of counseling services;
- conferring with outside experts, witnesses, vendors, attorneys, or other third parties of any kind;
- meetings or any kind of communication with any individuals, including you;
- engaging in any analysis, including conversations with Firm and outside lawyers and staff;
- preparing for or actually conducting any negotiations or discussions with adverse or other parties;

6



- depositions, hearings, arbitrations, court appearances, or trial, or preparing for such depositions, hearings, arbitrations, court appearances, or trial;
- any travel time necessary to attend negotiations, depositions, hearings, arbitrations, court appearances, trials, or anything else;
- any form of litigation, arbitration, legal counseling, or investigation.

The Firm records time in units of one-tenth of an hour.

Our standard rates follow:

| | |
|---|---|
| Senior Attorney/Partner | $650 - $910/hour |
| Mid-level Attorneys | $450 - $610/hour |
| Other Attorneys | $290 - $450/hour |
| Analysts | $235 - $295/hour |
| Law clerks and Law Student Apprentices | $125 - $195/hour |

We contemporaneously record time devoted to the matter. All time spent in any way on a matter by any employee or affiliate of the Firm is recorded. These hourly rates are subject to reasonable annual increases with notice to you.

## Expenses

Additional Charges for Expenses. You are completely and solely responsible for any out-of-pocket costs of any kind and any expenses actually incurred on your matter, however small. We shall not incur any expenses over $5,000 without your approval.

These include, by way of non-exhaustive example, expenses for travel (including reasonable client-related flights, trains, cars, lodging, reasonable meals, Internet access, and other expenses), off-site photocopying (when necessary), off-site discovery or other litigation or investigations support services, courier and messenger services, private investigators, shipping and postage, online legal research (billed proportionally to the amount of research done on your matter), expert witnesses and/or professional vendor services of any kind, transcription services, meals for staff who must spend time during the meal working on the case, overtime clerical costs, late night car or cab service (when staff works on your matter past 9:00pm, and will be billed proportionally to the amount of overtime spent on your case in addition to other matters), electronic funds transfer or bank transaction charges, and other items and services related to your matter.

Please note that there may be instances where you will incur travel or other case-related expenses for scheduled court appearances or other scheduled appearances which may be cancelled or postponed, either by the Firm or any other party to the matter. The Firm is not responsible for issuing a credit or refund for any expenses incurred in connection with any cancelled or postponed events when the cancellation or postponement was unavoidable. During intensely litigated times in the case, such as during a stretch of depositions, an evidentiary hearing, or at trial, we may be more likely to bill meals or take cabs late at night. Also, you may continue to incur expenses even after the case has concluded since the Firm will continue to do work on the matter until all issues have been completely resolved by all parties

7


and the matter closed by the Firm. Any expenses incurred on the matter will be distinguished in the invoice you receive.

### Other Payment Terms

Money in Trust. You will be required to pay the Firm money to hold in trust against which fees and/or expenses would be charged, and as a security deposit for payment of any delinquent monthly, hourly, or out of pocket fees, if applicable. The initial payment that we require, against which initial fees and expenses shall be billed, is $200,000. The security deposit we require is $50,000. The total payment we require upon execution of this Agreement is $250,000. All payments should be payable to "Balestriere PLLC", the payment entity for the Firm.

Any money held in trust and not used for fees and/or expenses will, of course, be promptly returned to you after our services have ended. You agree that if you are late in making any monthly payments, or the Firm has incurred hourly or any other fees or expenses, and our work on the matter is completed, the Firm shall be permitted to take the current monthly fee payment or any other fees or expenses due from these funds held in trust.

Unless we specifically agree otherwise, we shall not advance any expenses but, instead, will require you to pay directly for any expenses which exceed the amount of money we hold in trust. This includes, but is not limited to, you (and not the Firm) engaging the services of experts and/or professional services, if either are necessary. We would, of course, make all arrangements for such service providers (outside of actual payment for them).

If the amount in trust, except for the security deposit, is reduced to $20,000, we shall so notify you, and you will be required to replenish within five days of notice the amount in trust that will adequately cover what we believe will be the fees and/or expenses for the foreseeable future of the matter.

Payment. The Firm shall receive the actual payment for any Recovery or portion of the Recovery into the Firm's trust account. The Success Fee regarding which there is no dispute shall then be paid to the Firm and/or the Storch Firm in accordance with their joint fee arrangement. Then, expenses advanced by the Firm, if any, will be deducted from the remainder of the Recovery and paid to the Firm. Finally, the remainder will be paid to you. However, if there is any dispute regarding fees, only the amount in controversy shall be maintained in trust, in an escrow account with interest accruing to the benefit of the prevailing party. If there is any dispute regarding fees, then the non-prevailing party shall pay the prevailing party's attorney's fees and court costs incurred in resolving the fee dispute.

If multiple clients are engaged, and unless otherwise directed, we shall distribute the remaining Recovery in equal portions, by check, to each client.

Award of Costs and Fees. In certain circumstances, a court or other body may order the payment of costs or attorneys' fees by one party to the other. If a court or any other body should award fees or costs against you and in favor of an opposing party, you will be solely

8



responsible for payment of that amount separately from any amounts due to us, and without regard to the outcome of the litigation.

Fees and Expenses: Distinction. The different terms "fees" and "expenses" have the ordinary meaning as those terms are used regarding legal services.

- Fees are payments to a lawyer for services and value provided by the lawyer.
- Expenses are moneys actually spent out of pocket on goods or services separate and apart from the actual services or value provided by the lawyer.

Obligation to Pay the Firm. Should you seek the assistance of any other attorney, law firm, or other party to aid in the litigation of this matter while the Firm is still engaged to represent you regarding this matter - meaning that you have not terminated our services - you shall remain solely responsible for any fees owed to the Firm, as well as to any other outside party, whether or not affiliated with the Firm. Any fees or expenses owed to any outside party will not diminish the amount of fees owed to the Firm. You agree to fulfill your outstanding fee obligations to the Firm prior to the fulfilling of any obligations to any new attorney, affiliated or not, with our Firm. You agree that the Firm reserves all rights we have to fees, whether in quantum meruit, contract, or any other form. You also agree to notify us in writing if you engage or obtain the services of any other lawyer at any time.

Estimates. All dispute resolution is by definition inherently risky and unpredictable. Consequently, although we may offer an opinion about the possible or probable course or results of our engagement, including fees and costs needed to complete the matter, **we cannot and do not guarantee or represent that we can obtain any particular result, or that the amount of fees or costs shall be a certain amount or less**. Any projections we make regarding costs shall be made in good faith but are not guaranteed regarding what the actual cost will be. The cost of dispute resolution may change dramatically based on factors we do not control, including, for example, actions taken by our adversary, rulings by the court or other dispute resolution body, or other developments in the dispute resolution. The actual fees and costs for which you will be liable will be based on this Agreement. Past results do not guarantee future outcomes.

Lien. You agree that the Firm will have a lien for its fees and costs (including expenses) advanced on all claims and causes of action subject to its representation of you under this Agreement and on all proceeds of any Recovery obtained (whether by settlement, arbitration award, court judgment, or any other means, regardless of whether the Firm is counsel of record, and regardless of whether the relationship between you and the Firm is terminated).

LEAD REPRESENTATION, MAJOR DECISION MAKING, AND AUTHORITY

As long as the Firm represents you in any way in this matter, the Firm shall remain lead counsel. This means that the Firm shall have primary authority in the matter compared to any other lawyers or advisors, and any other attorney, law firm, or other party that may aid in the litigation of this matter shall not make any tactical, strategic and litigation decisions without the Firm's prior written consent.

9


The Firm shall not accept service of process on your behalf without approval from you.

The Firm shall make all tactical, strategic, and litigation decisions in the matter we are ethically permitted to, **including any public relations decisions (including dealing with any media and issuance of any public statements of any kind, including press releases).** Obviously, however, we shall discuss all major decisions in the case, including media or press decisions, with you. As long as time permits, we shall not respond to any media inquiries without your approval. You acknowledge that we have that right to publicize or otherwise distribute public information regarding the matter.

The Firm and the Storch Firm shall work together on your matter pursuant to the following terms and you hereby consent to the terms of the following fee-sharing arrangement between the Firm and the Storch Firm prior to the time of the proposed association between attorneys:

- The Firm and the Storch Firm shall split the hourly fees generated by the matter.

  o The Storch Firm shall receive 20% of the initial Reduced Hourly Rates, as defined above, which the Firm bills to the client in the matter for work performed by Firm attorneys and personnel;

  o The Storch Firm shall receive 100% of the hourly fees (whether discounted or not) generated from work performed by Storch (whether billed through the Firm or otherwise);

  o The Storch Firm shall receive 35% of any Success Fee earned by the Firm in the matter, as well as 35% of any additional fees the Firm recaptures above its Reduced Hourly Rates, independent of the Success Fee. Alternatively, in the event that, for whatever reason, no Success Fee will be paid (either due to a difficult-to-value settlement, termination, client or attorney withdrawal, or any other reason) and the Firm instead will be compensated by recapturing in full or in part any portion of its undiscounted fees, defined as the difference between the Standard Hourly Rates and the Reduced Hourly Rates ("Recaptured Fees"), then Storch will be paid 35% of the total hourly fees generated in connection with work performed by Firm attorneys and personnel, and 100% of hourly fees generated in connection with work performed by Storch.

- The Firm and the Storch Firm assume joint responsibility for the representation for as long as this fee-sharing agreement is in effect, and the division of fees is based upon this joint responsibility. In accepting joint responsibility, Storch will make reasonable efforts to assure adequacy of representation, provide adequate client communication, respond to client questions, and assist the Firm when necessary. The Firm will keep Storch reasonably informed of the Matter.

- You acknowledge and understand that Storch and the Firm are not in or a part of the same firm. You further acknowledge that the total fee to be charged is reasonable, not excessive and not unconscionable considering, among other things, the nature of the fee agreement (contingency fee), the legal expertise involved in the representation, the legal issues involved in the representation, and the amount of work and investment of resources necessary to prosecute your case.

Settlement. The Firm will notify you promptly of the terms of any settlement offer received by the Firm.

## WAIVER

Waiver of Future Conflicts with Any Adverse Party. We may currently or in the future represent one or more other clients in matters that may in some way relate to your current matter. We are undertaking this engagement on condition that we may represent other clients in matters in which we do not represent you, even if the interests of the other clients are adverse to yours, including the appearance on behalf of another client adverse to you in litigation or arbitration, provided of course, that the other matter is not substantially related to our representation of you, and that in the course of representing you we do not obtain confidential information from you material to the representation of the other clients. If our Firm does not continue an engagement or is required to withdraw from a matter due to a conflict of interest, you may incur delay, prejudice, or additional cost associated with acquainting new counsel with the matter.

Your express consent to this arrangement is required, however, because of the arrangement's possible adverse effects on the performance of our duties as attorneys to remain loyal to each client, to maintain client confidences, and to render legal services with vigor and competence.

By your signature below, you hereby waive any right you may have now or in the future to object to, or to disqualify the Firm from, representation of any third party in any future litigation. You further acknowledge that you make this express waiver voluntarily, knowingly, and intentionally, in consideration of the Firm's Agreement to represent you in this matter.

Nothing in this letter permits us to represent in any fashion in this matter a party which is actually adverse to you in this matter. Such action is unethical and something the Firm would never do. Upon engagement by you in this matter, we cannot represent any party whose interests are adverse to yours in this matter. Moreover, the Firm has no present intention or possibility in the future of representing any party which is adverse to you in this action.



## POTENTIAL TERMINATION OF RELATIONSHIP

**Initial Termination of Services.** If after our initial investigation and before we file any complaint or notice of any kind, we decide not to continue to represent you in this matter, we shall notify you of that decision and our services will be terminated. After that point there will be no longer be an attorney-client relationship between us, and we will not represent you further in this matter.

Moreover, at any time after the execution of this Agreement or any future engagement Agreement or amendment, you agree that we have the right to stop representing you in this matter, consistent with our ethical obligations, and you have the right to terminate our services without cause. If we decide to stop representing you, we shall notify you of that decision, and all of our services in this matter will be terminated.

**Withdrawal.** The Firm and/or the Storch Firm may withdraw from this engagement at any time permitted by law. The circumstances under which it may be permissible to withdraw include, but are not limited to, the following: (a) upon your consent, or (b) if we determine that you have made a material misrepresentation to the Firm and/or the Storch Firm or omitted to disclose a material fact to the Firm and/or the Storch Firm, or (c) if, in the Firm's and/or the Storch Firm's opinion, your conduct renders it unreasonably difficult for the Firm and/or the Storch Firm to carry out its retention effectively.

In the unlikely event that circumstances make it necessary to do so, we may withdraw with good cause from this engagement for nonpayment of fees or expenses or for any other reason authorized or required by the applicable rules of professional conduct.

If we withdraw due to your misconduct in this matter ("Misconduct", as defined in this paragraph), you will be obligated to pay the Firm and the Storch Firm their fees at the Firm's and the Storch Firm's Standard Hourly Rates. For the purposes of this paragraph, Misconduct shall only mean a misrepresentation or material omission by you, illegal or unethical conduct in the matter, or engagement in conduct which, in the opinion of the Firm and/or the Storch Firm, endangers the reputation of the Firm and/or the Storch Firm.

We hope that this relationship continues for the life of this matter, and we would only terminate our services consistent with our ethical obligations.

**Client's Termination of Services.** You are, of course, entitled to terminate this engagement for any reason, subject to the Firm's right to be paid for services already rendered and expenses already incurred on your matter or any other service the Firm has provided for you.

If you decide to terminate the Firm without actual good cause shown, and without such specific cause or causes made explicit to us in writing, we shall still be due, regardless of whether we were providing you services at the time of any successful result of any kind (settlement or otherwise), our attorneys' fees. Our attorneys' fees shall be, at the Firm's sole discretion, either the fees as provided for in this engagement letter, including, but not limited to, the Success Fee, or our fees on an hourly rate basis for the services of any employees or

12



affiliates of the Firm calculated at the Firm's and Storch's non-discounted hourly rates. The Firm shall also be due full reimbursement for all costs expended in any way on your behalf.

The Firm reserves all rights, including the right to litigate to seek any unpaid fees, should we so choose.

We obviously hope that neither side will seek to terminate the relationship. While the fee arrangement described in this Agreement otherwise controls, if either of us does decide to terminate the relationship, we agree to discuss the best way to resolve any fee arrangement.

## ARBITRATION REGARDING A FEE DISPUTE

In the event that a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which is attached to this Agreement.

## COOPERATION AND TRUST

Having reviewed the Statement of Client Rights and the Statement of Client Responsibilities sent to you with this Agreement, you agree to cooperate and fully participate in the conduct of any matter in which we provide services to you, including providing us with information we need in order to adequately represent you and provide the services you wish.

Such cooperation also includes, but is not limited to:

- reasonably being available for phone calls;
- promptly responding to any correspondence we send to you, including e-mails;
- raising issues of concern with us, of any kind, promptly, respectfully, and without delay;
- devoting your own time necessary to work with us to achieve as successful a resolution as possible in your matter;
- being available to review drafts of documents, should we request, **which you acknowledge are sent to you in draft form**.
- promptly providing truthful and complete responses to any requests for information, and not failing to disclose information or omitting information of any kind whatsoever which is material to the matter or to our attorney-client relationship; **you promise to provide this information even if you believe you have previously disclosed the requested information** (such repeated requests are commonplace and necessary, particularly at the beginning of a matter, so that we fully understand the facts and can be the best advocates we can be for your position);
- trusting that we will always endeavor to have our Firm take whatever steps we believe necessary, and spend whatever time is warranted, in order to provide you with superior legal representation and counseling (we are organized to be efficient, and shall always strive to be, but will not be so at the expense of quality work product or our ethical obligations);

13



- being prepared to push this case to trial or arbitration if necessary (unless we agree in writing that the engagement is for a limited purpose, you should NOT engage us unless you are prepared to go the distance in this matter and push the case to arbitration or trial);
- committing to engage only in legal and ethical conduct, and conduct which comports with any applicable laws, rules, and regulations.
- considering in good faith all settlement proposals offered in connection with the claims or potential claims;
- providing documents relating to claims, producing such documents in discovery, and attending any deposition and/or legal proceedings, if necessary.

Your cooperation as outlined in this paragraph is a material and substantive inducement to the Firm and Storch to take this matter on a contingency fee basis, and your failure to cooperate shall constitute sufficient grounds for the Firm and/or Storch to withdraw and seek recovery of its Unpaid Fees incurred to that point as if the Firm and Storch were being paid on an hourly basis in full instead of on a partial contingency basis. Likewise, you recognize and understand that most cases in the United States are resolved by way of compromise settlement at some point during the litigation process, and agree not to unreasonably refuse any good faith settlement proposal offered.

<u>DESIGNATION OF U.S. AGENT</u>

You hereby designate Jonathan Bernstein as your exclusive authorized client representative in the United States with sole client decision-making authority over strategic matters relating to this contemplated litigation, insofar as client direction is required. It is hereby agreed that the Firm and the Storch Firm may rely on Mr. Bernstein's authority and Mr. Bernstein's authority alone in making client decisions relating to litigation strategy and case management, and that the Firm and the Storch Firm shall not be required to seek additional authorizations from other client representatives or partners. The foregoing authorization shall remain in effect until such time as the Firm and the Storch Firm shall receive written notice that Mr. Bernstein has ceased to be a partner in the Company.

Nothing shall preclude the Firm or the Storch Firm from seeking the input of and/or guidance from other client representatives, though Mr. Bernstein's final authority nonetheless remains. Moreover, we shall be responsive to any inquiries or requests to information of any kind, at any time, from all of you.

<u>INDEMNIFICATION</u>

You agree to indemnify and hold harmless the Firm, Storch, and the Storch Firm from any and all actions, suits, proceedings, and investigations brought by third parties for damages, obligations, penalties, judgments, awards, liabilities, costs, expenses and/or disbursements directly or indirectly caused by, relating to, based upon, arising out of, and/or in connection with your engagement of services by the Firm. Your obligations to indemnify the firm shall not apply under those circumstances where there has been a finding of ethical or legal misconduct by the Firm.

14


This provision shall in no way limit your right to bring a legal malpractice claim against the Firm to the extent permitted by law.

## ENTIRE AGREEMENT AND SEVERABILITY

This Agreement, together with Exhibit A, which is incorporated by reference as if fully set forth herein, contains the entire understanding of you and the Firm with regard to our provision of services to you. If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

## INDEPENDENT COUNSEL

You acknowledge that you had sufficient time to review this Agreement and consult with other attorneys or advisors concerning this Agreement if you so desire, and that you have freely determined to execute this Agreement without duress.

## AUTHORITY

By signing this Agreement, you acknowledge and confirm that you are bound to the terms of this Agreement and you are, in fact, bound to such terms. You also acknowledge that you personally undertake and assume the full performance hereof, including payments of amounts hereunder.

## COMMUNICATION

It is important to us that our clients be aware of the progress of their matters, and that they have the full opportunity to ask us any questions that may arise. Accordingly, we hope you will feel free to contact us—either in our office, on our mobile phones, or via e-mails—with any questions, whether relating to the case, your invoices, the fees, or anything else regarding our relationship.

## SCOPE AND ENFORCEMENT OF THIS AGREEMENT

This Agreement may not be amended, waived, or modified without the mutual written consent of all of the parties hereto. This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to any applicable principles of conflicts of law. If any dispute or claim between the parties shall arise, the parties shall submit to and have such shall be settled by arbitration administered by the American Arbitration Association, in New York before one arbitrator, in accordance with its Commercial Arbitration Rules ("Arbitration Rules"), and judgment on the award rendered by the arbitration may be entered in any court having jurisdiction thereof.

Notwithstanding any provision in those Arbitration Rules, each party shall pay its own professional service fees (including attorney's fees) and costs related to the arbitration, and New York law shall apply to the extent possible, including regarding any claims or defenses.

15



**BALESTRIERE FARIELLO**

It is understood and agreed that this Agreement may be executed in identical counterparts and may be transmitted by facsimile or e-mail, each of which shall be deemed an original for all purposes.

By signing this Agreement, Juan Diaz Rivera confirms that he has the right and authority to bind Desarrolladora Farallón, S. de R.L. de C.V. to the terms of this Agreement and Juan Diaz Rivera is, in fact, binding Desarrolladora Farallón, S. de R.L. de C.V. to such terms.

Besides signing below, please write your initials and the date on every page of this agreement.

If you have any questions about anything at all, please do not hesitate to contact us. We look forward to fighting for you and being your advisor.

Sincerely,

/s/ John G. Balestriere                        November 20, 2014
John Balestriere                                  Date
Balestriere Fariello

/s/ Adina G. Storch                             November 20, 2014
By: Adina G. Storch                            Date
Law Offices of Adina G. Storch, PLLC

The above is understood and agreed to:

_____        Nov 24 2014
Juan Diaz Rivera, on behalf of himself and      Date
Desarrolladora Farallón, S. de R.L. de C.V.

_____        November 21, 2014
Jon Bernstein, on behalf of himself and         Date
Desarrolladora Farallón, S. de R.L. de C.V.

cc:    Rachel Davidson (via email: rachel@bernsteincorp.com)
cc:    Leticia Diaz Rivera (via email: leticia@pedregal.com)
cc:    Manuel Diaz Rivera (via email: manuel@pedregal.com)
cc:    Adina G. Storch (via email: agsparis@yahoo.com)

16



## *Statement of Client's Rights*
(As Adopted by the Administrative Board of the Courts)

1. You are entitled to be treated with courtesy and consideration at all times by your lawyer and the other lawyers and personnel in your lawyer's office.

2. You are entitled to an attorney capable of handling your legal matter competently and diligently, in accordance with the highest standards of the profession. If you are not satisfied with how your matter is being handled, you have the right to withdraw from the attorney-client relationship at any time (court approval may be required in some matters and your attorney may have a claim against you for the value of services rendered to you up to the point of discharge).

3. You are entitled to your lawyer's independent professional judgment and undivided loyalty uncompromised by conflicts of interest.

4. You are entitled to be charged a reasonable fee and to have your lawyer explain at the outset how the fee will be computed and the manner and frequency of billing. You are entitled to request and receive a written itemized bill from your attorney at reasonable intervals. You may refuse to enter into any fee arrangement that you find unsatisfactory. In the event of a fee dispute, you may have the right to seek arbitration; your attorney will provide you with the necessary information regarding arbitration in the event of a fee dispute, or upon your request.

5. You are entitled to you have your questions and concerns addressed in a prompt manner and to have your telephone calls returned promptly.

6. You are entitled to be kept informed as to the status of your matter and to request and receive copies of papers. You are entitled to sufficient information to allow you to participate meaningfully in the development of your matter.

7. You are entitled to have your legitimate objectives respected by your attorney, including whether or not to settle your matter (court approval of a settlement is required in some matters).

8. You have the right to privacy in your dealings with your lawyer and to have your secrets and confidences preserved in the extent permitted by law.

9. You are entitled to have your attorney conduct himself or herself ethically in accordance with the Code of Professional Responsibility.

10. You may not be refused representation on the basis of race, creed, color, age, religion, sex, sexual orientation, national origin or disability.

17



## *Statement of Client's Responsibilities*

Reciprocal trust, courtesy and respect are the hallmarks of the attorney-client relationship. Within that relationship, the client looks to the attorney for expertise, education, sound judgment, protection, advocacy, and representation. These expectations can be achieved only if the client fulfills the following responsibilities:

1. The client is expected to treat the lawyer and the lawyer's staff with courtesy and consideration.

2. The client's relationship with the lawyer must be one of complete candor and the lawyer must be apprised of all facts or circumstances of the matter being handled by the lawyer even if the client believes that those facts may be detrimental to the client's cause or unflattering to the client.

3. The client must honor the fee arrangement as agreed to with the lawyer, in accordance with law.

4. All bills for services rendered which are tendered to the client pursuant to the agreed upon fee arrangement should be paid promptly.

5. The client may withdraw from the attorney-client relationship, subject to financial commitments under the agreed to fee arrangement, and, in certain circumstances, subject to court approval.

6. Although the client should expect that his or her correspondence, telephone calls and other communications will be answered within a reasonable time frame, the client should recognize that the lawyer has other clients equally demanding of the lawyer's time and attention.

7. The client should maintain contact with the lawyer, promptly notify the lawyer of any change in telephone number or address and respond promptly to a request by the lawyer for information and cooperation.

8. The client must realize that the lawyer need respect only legitimate objectives of the client and that the lawyer will not advocate or propose positions which are unprofessional or contrary to law or the Lawyer's Code of Professional responsibility.

9. The lawyer must be unable to accept a case if the lawyer has previous professional commitments which will result in inadequate time being available for the proper representation of a new client.

10. A lawyer is under no obligation to accept a client if the lawyer determines that the cause of the client is without merit, a conflict of interest would exist or that a suitable working relationship with the client is not likely.

18



**Attorney-Client Fee Dispute Resolution Program**

The New York State court system has established a Statewide Fee Dispute Resolution Program (FDRP) to resolve attorney-client disputes over legal fees through arbitration (and in some cases mediation). See the full program description here (http://www.nycourts.gov/admin/feedispute/pdfs/FD_brochure.pdf).

The FDRP is made up of a network of State-approved and monitored local programs that resolve attorney-client fee disputes outside of court through arbitration. Arbitration is a hearing conducted by one or more neutral persons who have special training and experience. One arbitrator or a panel of three arbitrators (at least one of whom must be a non-lawyer) listen to the arguments on both sides and decide the outcome of the dispute. Fee arbitration is fair, inexpensive and usually faster than going to court.

In addition to arbitration, some local programs may offer mediation. This is a process by which both sides meet with the assistance of a trained mediator to clarify issues and explore options for a mutually acceptable resolution. Mediation provides the opportunity for you and your attorney to discuss your concerns and reach a satisfactory result without going to court. Unlike an arbitrator, the mediator does not issue a decision. Participation in mediation is voluntary for your attorney and you, and it does not waive your right to arbitration. If you are interested in resolving your dispute through mediation, you may indicate this on the Request for Arbitration form. However, not every local program offers mediation.

The FDRP's Board of Governors has approved a number of local programs which administer the FDRP on a region by region basis. These local programs are run by bar associations or by the court system's regional Administrative Judges. All local programs have been carefully reviewed to ensure that they will resolve fee disputes in a fair, impartial and efficient manner.

In general, your lawyer may not sue you in court over a fee dispute unless he or she first provided you with notice of your right to utilize the FDRP. Once you have received this notice you have 30 days to decide whether to use the FDRP. If you don't choose to participate in the FDRP within 30 days, your lawyer is free to pursue the matter in court.

Fee dispute resolution services are provided by local programs throughout New York. The local program is determined by where the majority of legal services were performed. Find your local program (http://www.courts.state.ny.us/admin/feedispute/local_programs.shtml) and download the local program's rules and forms.

Please note that the FDRP's jurisdiction is limited to resolving attorney-client disputes over legal fees.

- The FDRP cannot address claims of lawyer misconduct.
- The FDRP cannot address claims of lawyer malpractice.
- The FDRP applies when:
  - Your attorney practices in New York and your case involved a civil matter.

19



- The amount in dispute is between $1,000 and $50,000 (fee disputes can involve fees that you have already paid your attorney and for which you seek a refund, or fees that your attorney claims are owed by you).
- The legal representation began on or after January 1, 2002.
- Your attorney has rendered services to you within two years prior to the filing of the request for fee arbitration.

If you believe that your attorney committed malpractice in your case, you should not utilize the FDRP because it is possible that an arbitration decision against you with regard to the fee dispute could adversely affect your ability to pursue malpractice in court at a later date.

If you believe attorney misconduct or malpractice is present in your case, please find contact information for the appropriate Grievance Committee (http://www.courts.state.ny.us/ip/attorneygrievance/complaints.shtml).

# Exhibit B

**BALESTRIERE FARIELLO**

BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
T: +1-212-374-5400
F: +1-212-208-2613
info@balestrierefariello.com
www.balestrierefariello.com

March 17, 2015

**VIA E-MAIL**
Juan Diaz Rivera
juan@pedregal.com

Jon Bernstein
jon@bernsteincorp.com

Desarrolladora Farallón, S. de R.L. de C.V.
Camino de La Plaza 145
Cabo San Lucas, BCS, Mexico 23450

Re: Engagement of services of Balestriere Fariello ("the Firm") for your matter against ████████████████ ("████"), and related entities and individuals (the "matter").

Dear Jon and Juan:

This letter confirms the discussions we have had regarding the Firm's representation of Desarrolladora Farallón, S. de R.L. de C.V. ("you," the "Company" or the "Client") ("you," "your," "yours," "his," "her," "its," or similar pronoun means the party or parties who seeks representation) in your matter. You agree that, consistent with any applicable ethical rules, the Firm has the <u>exclusive</u> right to represent you in connection with this matter and pursue any claims asserted or to be asserted by you in or related to this matter. The Firm's services in this matter will end, unless otherwise agreed upon in a written document signed by us, when there is a final agreement, settlement, decision, or a judgment.

Please take care in reviewing this letter and ask us any questions of any kind you have.

As we can discuss at any time, <u>**we cannot and do not guarantee or represent that we can obtain any particular result, or that the amount of fees or costs or the length of the matter shall be a certain amount**</u>. This is particularly so here as, based on what you have shared with us, we understand that there are years of history between the parties prior to our engagement, the adversaries appear to be well resourced and aggressive, and the adversaries almost certainly shall take the position that they are not simply postured as defendants but also as plaintiffs to whom you owe money and who have been wronged by you. This litigation circumstance, as well as the inherent risk in litigation and the way different courts manage litigation, means that at many times the pace (and, thus, cost) of the litigation will not solely be within our discretion.

1

REDACTED


You have asked for us to provide you with our best estimate of a budget notwithstanding our inability to guarantee or represent the length of the matter or the complete scope of work necessary to represent your interests. Consistent with the above referenced caveats, we provide the following good faith <u>estimates of fees and costs for specific time periods, assuming that the matter is still active (i.e., it has not been resolved by settlement or otherwise) during the time period noted</u>.

- February 15, 2015 – with preliminary injunction – $350,000 to $450,000
- February 15, 2015 – without injunction – $250,000 to $300,000
- February 16, 2015 through May 15, 2015 – $250,000 to $350,000
- May 16, 2015 through August 15, 2015 – $200,000 to $400,000
- August 16, 2015 through November 15, 2015 – $200,000 to $350,000
- November 16, 2015 through May 15, 2016 – $300,000 to $600,000

Upon your request, we shall provide a further estimated budget by Wednesday, January 25, 2015, and at any time, upon reasonable notice, while we represent you during the matter.

## ENGAGEMENT LETTER AND FEE AGREEMENT ("Agreement")

### FEES, EXPENSES, BILLING, AND PAYMENT

The representation of you by this or any other lawyer with which we choose to coordinate our efforts in this matter is on the basis described below, including the payment of a contingency fee (the "Success Fee").

<u>Success or Share of the Recovery Fee</u>. The Firm will receive a Success Fee based on the gross recovered amount, whether such recovery comes about by reason of judgment, settlement of any kind whatsoever, court order or any other mechanism, inclusive of all pre- and post-judgment interest, computed as of the date of payment (the "Recovery"). The Success Fee shall not be limited by any taxes, liens, assessments, charges, or fees due by you or any other party and which shall be paid from the Recovery. To the extent applicable if there is a Non-Cash Recovery as defined below, "gross recovered amount" is limited as described in that section.

<u>Success Fee</u>. The Success Fee shall be capped and shall not be more than four times the difference between what the Firm and the Storch Firm (as defined below) combined would have billed at their Standard Hourly Rates and the actual payment in fees which you pay the Firm and/or the Storch Firm combined on an ongoing basis as the matter proceeds (such maximum success fee called "the Success Fee Cap.").

By way of example, if during the course of the matter you pay the Firm and Storch combined $1,500,000 in out of pocket fees (not including expenses), but at the Standard Hourly Rates the total fees billed would have been $4,500,000, then the Success Fee shall be capped at $12,000,000 (four times the difference of $3,000,000 in this example).

Subject to this Success Fee Cap, the Success Fee shall be determined as a percentage of the Recovery on the following schedule.

- 27.5% of the entire Recovery (however and whenever recovered) if the case is resolved after the filing of any documents of any kind with a court or other dispute resolution body, but before the beginning of any discovery of any kind,

- 30% of the entire Recovery (however and whenever recovered) after any discovery of any kind whatsoever has begun, and

- 35% of the entire Recovery (however recovered) at the trial stage. "At the trial stage" is defined as the time after we have taken any steps of any kind actually preparing for trial or arbitration and either (1) upon the completion of general discovery, including, but not limited to, once a settlement conference has been scheduled at or near the end of discovery, or (2) if the case is scheduled for a specific trial date or arbitration date.

You agree that the Firm is choosing to share the risk with you in this litigation based not merely on our due diligence, but on your representations regarding the merits of your claims and the ability to obtain a Recovery if we are successful in prosecution of any affirmative claims you have.

If there is no Recovery then you shall have no obligation to pay any fees beyond those which you have <u>incurred</u> on a discounted hourly basis for the full duration of the engagement.

<u>You may have a tax liability as a result of the Recovery and should immediately discuss how to address such liability, if any, with your accountant or other tax adviser.</u> We do not have the requisite qualifications to provide you with advice regarding any tax liability which may arise as a result of the Recovery, but shall assist you however you reasonably request in finding such a tax adviser. IRS Circular 230 Disclosure: As required by federal law and to ensure compliance with requirements imposed by the Internal Revenue Service, please be advised that any U.S. federal tax advice is not intended to be used or relied upon, and cannot be used or relied upon, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

If, in any action, outside of the matter where we are representing you, you are ordered or agree to pay any money, or provide any other service or thing of value of any kind, from any source, as a party, this shall not act to net, reduce, or offset either the Success Fee. As a simple example, if we obtain a recovery for you of $1,000.00, but you also, in another action or dispute, either agree to or are ordered as part of a judgment or any other order, pay $250.00 to another party, our Success Fee shall still be based on the recovery of $1,000.00, which we obtain for you, and not reduced by the amount ($250.00) you are ordered to pay in the other matter.

The Recovery is defined as a cash recovery or <u>anything</u> of value, or <u>any other service or thing of value</u> of any kind, from any source, including, but not limited to, the following:

3

a) any transfer, purchase, or purchase rights of any assets, licensing agreements, or any business transactions or goodwill which have any value of any kind;

b) restitution from any source, including a government source, if our Firm has, prior to the payment of restitution, had any contact of any kind with the source or government body including, but not limited to, any communications or negotiations with the source; or

c) reduction of any amount of any debt, taxes, liens, or any financing obligations of any kind;

NON-CASH RECOVERY

It may be necessary for Success Fee purposes to determine the valuation of a non-cash recovery (including, but not limited to, a resolution whereby adversarial parties agree to convey to you their shares in the Property, or forgive debt of the Property which exists prior to the resolution, or both)("Non-Cash Recovery").

Negotiation in Good Faith Regarding Valuation of Non-Cash Recovery. If there is a Non-Cash Recovery which is part of any resolution of the matter, you and the Firm and the Storch Firm shall within 30 days of resolution of the matter negotiate with one another in good faith in attempting to arrive at an agreement of a cash equivalent of the Non-Cash Recovery for Success Fee purposes.

Value of Non-Cash Recovery. The Non-Cash Recovery shall be your increase in net equity in the Property post-resolution of the matter as compared to immediately pre-resolution of the matter. To determine this amount, you and the Firm and the Storch Firm agree that certain facts may be relevant:

- If shares in the Property are conveyed to you as part of any resolution of the matter, such conveyance shall be considered part of the Non-Cash Recovery.

- If debt on the Property is reduced as part of any resolution of the matter, the portion of such debt reduction which accrues to your benefit shall be considered part of the Non-Cash Recovery.

- If you must make any payments to any adversarial party solely for the purposes of resolution, or incur debt on the Property solely for the purposes of resolution (but not including for payment of the Success Fee), such payments or increased debt which you incur shall reduce the value of the Non-Cash Recovery.

Property Valuation Which May Be Necessary to Determine Value of Non-Cash Recovery. In order to determine the value of the Non-Cash Recovery, it may be necessary to determine the value of the Property.

As a guideline for determination of the value of the Property for Success Fee purposes, the parties agree that the following formula shall apply:

4

The net operating income for the Property for the 12 months prior to obtaining a resolution ("NOI") shall be multiplied by a fraction, the numerator of which shall be 100, and the denominator of which shall be the Accepted Cap Rate, less any debt existing on the Property.

For purposes of illustration, if

1. The NOI is $15MM
2. The Accepted Cap Rate is 5.5
3. the interest conveyed to you pursuant to the resolution of the matter is 40% of the Property,
4. debt forgiven pursuant to the resolution of the matter is $130MM,
5. pre- resolution you owned 60% of the property and
6. you must pay $100MM (either by incurring new debt on the property or otherwise) the value of the Non-Cash Recovery would be:

- $((\$15MM \times (100 / 5.5)) \times .40) + (\$130MM \times .60) - \$100MM = \mathbf{\$87.091MM}$

<u>Dispute Regarding Valuation of Non-Cash Recovery Subject to Arbitration</u>. If you and the Firm and the Storch Firm cannot come to an agreement regarding a Success Fee based on any Non-Cash Recovery after you and the Firm and the Storch Firm have negotiated for at least 60 days, then such controversy relating to the Success Fee based on the Non-Cash Recovery shall be settled by arbitration administered by the American Arbitration Association, in New York before one arbitrator, in accordance with its Commercial Arbitration Rules ("Arbitration Rules"), and judgment on the award rendered by the arbitration may be entered in any court having jurisdiction thereof.

Notwithstanding any provision in those Arbitration Rules, each party shall pay its own professional service fees (including attorney's fees) and costs related to the arbitration, and New York law shall apply to the extent possible, including regarding any claims or defenses.

<u>Hourly fees in lieu of Success Fee; Non-Cash Recovery</u>. In the event of any Recovery, the Firm and Storch shall, individually and severally, in their sole and absolute discretion, have the right to elect in lieu of a Success Fee, either: (i) a cash payment in the amount of the total undiscounted fees for the duration of the engagement based on the Standard Hourly Rates of the attorneys and personnel who worked on the Matter, as those rates may have evolved over time ("Total Undiscounted Fees"); or (ii) cash paid as a Success Fee based on the increased net equity to you from a Non-Cash Recovery.

## Hourly Fees

<u>Reduced Hourly Rates</u>. You agree to pay us by the hour at a reduced rate, paying us a fraction of our Standard Hourly Rates, as such rates are defined and described below.

- John Balestriere, and any other partner shall bill at $300.00/hour, a 67% discount.

- Jillian McNeil or any primary non-partner attorney shall bill at $217.00/hour, a 67% discount.
- All other attorneys shall bill at $137.00/hour, a 67% discount.
- All analysts shall bill at $95.00/hour, a 68% discount.

In addition, Adina G. Storch ("Storch"), of the Law Offices of Adina G. Storch, PLLC ("Storch Firm") is hereby retained as a litigation consultant, pursuant to the terms set forth below. Storch's work shall be billed at an hourly discounted rate of $300, commensurate with the Firm's discounted partner rate above. Storch's standard rates, for the purposes of this engagement and if ever applicable, shall be the same as John Balestriere's.

Standard Hourly Rates. When billing by the hour, no matter what the hourly rate, the Firm charges for **all time spent on a matter** by any attorney (including partners, of counsel, and associates), employee (including non-admitted law school graduates and analysts), or affiliate (including law student apprentices and undergraduate apprentices).

When we bill by the hour in any fashion, we do require that clients keep money in trust against which we bill for fees (i.e., for hours devoted to the work) and expenses (i.e., filing fees, depositions, and out of pocket expenses). We submit bills for fees and expenses generally on a monthly basis and ask that bills be paid promptly and that the trust account be promptly replenished. Firm bills shall include entries for time devoted to the matter by Storch, but there may come a time when the Storch Firm sends directly to you Storch's invoices for fees covered by this Agreement in lieu of inclusion in the Firm's invoices.

You understand that different staff members of different levels and experience will perform work on the matter. You also understand that non-lawyers will work with lawyers in providing services to you.

Such time for which we charge includes, **but is not limited to**, time devoted to the matter for the following:

- telephone calls or correspondence, including letters or electronic mail, to you, other parties, other attorneys, employees, or affiliates of the Firm;
- conferring with you, other attorneys, others at the Firm, or anyone else on a matter;
- reviewing, preparing, or organizing documents of any kind in any manner;
- legal or any other kind of research;
- any kind of counseling services;
- conferring with outside experts, witnesses, vendors, attorneys, or other third parties of any kind;
- meetings or any kind of communication with any individuals, including you;
- engaging in any analysis, including conversations with Firm and outside lawyers and staff;
- preparing for or actually conducting any negotiations or discussions with adverse or other parties;

6

- depositions, hearings, arbitrations, court appearances, or trial, or preparing for such depositions, hearings, arbitrations, court appearances, or trial;
- any travel time necessary to attend negotiations, depositions, hearings, arbitrations, court appearances, trials, or anything else;
- any form of litigation, arbitration, legal counseling, or investigation.

The Firm records time in units of one-tenth of an hour.

Our standard rates follow:

| | |
|---|---|
| Senior Attorney/Partner | $650 - $910/hour |
| Mid-level Attorneys | $450 - $610/hour |
| Other Attorneys | $290 - $450/hour |
| Analysts | $235 - $295/hour |
| Law clerks and Law Student Apprentices | $125 - $195/hour |

We contemporaneously record time devoted to the matter. All time spent in any way on a matter by any employee or affiliate of the Firm is recorded. These hourly rates are subject to reasonable annual increases with notice to you.

<u>Expenses</u>

<u>Additional Charges for Expenses</u>. You are completely and solely responsible for any out-of-pocket costs of any kind and any expenses actually incurred on your matter, however small. We shall not incur any expenses over $5,000 without your approval.

These include, by way of non-exhaustive example, expenses for travel (including reasonable client-related flights, trains, cars, lodging, reasonable meals, Internet access, and other expenses), off-site photocopying (when necessary), off-site discovery or other litigation or investigations support services, courier and messenger services, private investigators, shipping and postage, online legal research (billed proportionally to the amount of research done on your matter), expert witnesses and/or professional vendor services of any kind, transcription services, meals for staff who must spend time during the meal working on the case, overtime clerical costs, late night car or cab service (when staff works on your matter past 9:00pm, and will be billed proportionally to the amount of overtime spent on your case in addition to other matters), electronic funds transfer or bank transaction charges, and other items and services related to your matter.

Please note that there may be instances where you will incur travel or other case-related expenses for scheduled court appearances or other scheduled appearances which may be cancelled or postponed, either by the Firm or any other party to the matter. The Firm is not responsible for issuing a credit or refund for any expenses incurred in connection with any cancelled or postponed events when the cancellation or postponement was unavoidable. During intensely litigated times in the case, such as during a stretch of depositions, an evidentiary hearing, or at trial, we may be more likely to bill meals or take cabs late at night. Also, you may continue to incur expenses even after the case has concluded since the Firm will continue to do work on the matter until all issues have been completely resolved by all parties

**BALESTRIERE
FARIELLO**

and the matter closed by the Firm. Any expenses incurred on the matter will be distinguished in the invoice you receive.

### Other Payment Terms

*Money in Trust*. You will be required to pay the Firm money to hold in trust against which fees and/or expenses would be charged, and as a security deposit for payment of any delinquent monthly, hourly, or out of pocket fees, if applicable. The initial payment that we require, against which initial fees and expenses shall be billed, is **$200,000**. The security deposit we require is **$50,000**. The total payment we require upon execution of this Agreement is **$250,000**. All payments should be payable to "**Balestriere PLLC**", the payment entity for the Firm.

Any money held in trust and not used for fees and/or expenses will, of course, be promptly returned to you after our services have ended. You agree that if you are late in making any monthly payments, or the Firm has incurred hourly or any other fees or expenses, and our work on the matter is completed, the Firm shall be permitted to take the current monthly fee payment or any other fees or expenses due from these funds held in trust.

Unless we specifically agree otherwise, we shall not advance any expenses but, instead, will require you to pay directly for any expenses which exceed the amount of money we hold in trust. This includes, but is not limited to, you (and not the Firm) engaging the services of experts and/or professional services, if either are necessary. We would, of course, make all arrangements for such service providers (outside of actual payment for them).

If the amount in trust, except for the security deposit, is reduced to $20,000, we shall so notify you, and you will be required to replenish within five days of notice the amount in trust that will adequately cover what we believe will be the fees and/or expenses for the foreseeable future of the matter.

*Payment*. The Firm shall receive the actual payment for any Recovery or portion of the Recovery into the Firm's trust account. The Success Fee regarding which there is no dispute shall then be paid to the Firm and/or the Storch Firm in accordance with their joint fee arrangement. Then, expenses advanced by the Firm, if any, will be deducted from the remainder of the Recovery and paid to the Firm. Finally, the remainder will be paid to you. However, if there is any dispute regarding fees, only the amount in controversy shall be maintained in trust, in an escrow account with interest accruing to the benefit of the prevailing party. If there is any dispute regarding fees, then the non-prevailing party shall pay the prevailing party's attorney's fees and court costs incurred in resolving the fee dispute.

If multiple clients are engaged, and unless otherwise directed, we shall distribute the remaining Recovery in equal portions, by check, to each client.

*Award of Costs and Fees*. In certain circumstances, a court or other body may order the payment of costs or attorneys' fees by one party to the other. If a court or any other body should award fees or costs against you and in favor of an opposing party, you will be solely

responsible for payment of that amount separately from any amounts due to us, and without regard to the outcome of the litigation.

Fees and Expenses: Distinction. The different terms "fees" and "expenses" have the ordinary meaning as those terms are used regarding legal services.

- Fees are payments to a lawyer for services and value provided by the lawyer.
- Expenses are moneys actually spent out of pocket on goods or services separate and apart from the actual services or value provided by the lawyer.

Obligation to Pay the Firm. Should you seek the assistance of any other attorney, law firm, or other party to aid in the litigation of this matter while the Firm is still engaged to represent you regarding this matter - meaning that you have not terminated our services - you shall remain solely responsible for any fees owed to the Firm, as well as to any other outside party, whether or not affiliated with the Firm. Any fees or expenses owed to any outside party will <u>not</u> diminish the amount of fees owed to the Firm. You agree to fulfill your outstanding fee obligations to the Firm prior to the fulfilling of any obligations to any new attorney, affiliated or not, with our Firm. You agree that the Firm reserves all rights we have to fees, whether in quantum meruit, contract, or any other form. You also agree to notify us in writing if you engage or obtain the services of any other lawyer at any time.

Estimates. All dispute resolution is by definition inherently risky and unpredictable. Consequently, although we may offer an opinion about the possible or probable course or results of our engagement, including fees and costs needed to complete the matter, **we cannot and do not guarantee or represent that we can obtain any particular result, or that the amount of fees or costs shall be a certain amount or less**. Any projections we make regarding costs shall be made in good faith but are not guaranteed regarding what the actual cost will be. The cost of dispute resolution may change dramatically based on factors we do not control, including, for example, actions taken by our adversary, rulings by the court or other dispute resolution body, or other developments in the dispute resolution. The actual fees and costs for which you will be liable will be based on this Agreement. Past results do not guarantee future outcomes.

Lien. You agree that the Firm will have a lien for its fees and costs (including expenses) advanced on all claims and causes of action subject to its representation of you under this Agreement and on all proceeds of any Recovery obtained (whether by settlement, arbitration award, court judgment, or any other means, regardless of whether the Firm is counsel of record, and regardless of whether the relationship between you and the Firm is terminated).

LEAD REPRESENTATION, MAJOR DECISION MAKING, AND AUTHORITY

As long as the Firm represents you in any way in this matter, the Firm shall remain lead counsel. This means that the Firm shall have primary authority in the matter compared to any other lawyers or advisors, and any other attorney, law firm, or other party that may aid in the litigation of this matter shall not make any tactical, strategic, and litigation decisions without the Firm's prior written consent.

The Firm shall not accept service of process on your behalf without approval from you.

The Firm shall make all tactical, strategic, and litigation decisions in the matter we are ethically permitted to, **including any public relations decisions (including dealing with any media and issuance of any public statements of any kind, including press releases).** Obviously, however, we shall discuss all major decisions in the case, including media or press decisions, with you. As long as time permits, we shall not respond to any media inquiries without your approval. You acknowledge that we have that right to publicize or otherwise distribute public information regarding the matter.

The Firm and the Storch Firm shall work together on your matter pursuant to the following terms and you hereby consent to the terms of the following fee-sharing arrangement between the Firm and the Storch Firm prior to the time of the proposed association between attorneys:

- The Firm and the Storch Firm shall split the hourly fees generated by the matter.

  o The Storch Firm shall receive 20% of the initial Reduced Hourly Rates, as defined above, which the Firm bills to the client in the matter for work performed by Firm attorneys and personnel;

  o The Storch Firm shall receive 100% of the hourly fees (whether discounted or not) generated from work performed by Storch (whether billed through the Firm or otherwise);

  o The Storch Firm shall receive 35% of any Success Fee earned by the Firm in the matter, as well as 35% of any additional fees the Firm recaptures above its Reduced Hourly Rates, independent of the Success Fee. Alternatively, in the event that, for whatever reason, no Success Fee will be paid (either due to a difficult-to-value settlement, termination, client or attorney withdrawal, or any other reason) and the Firm instead will be compensated by recapturing in full or in part any portion of its undiscounted fees, defined as the difference between the Standard Hourly Rates and the Reduced Hourly Rates ("Recaptured Fees"), then Storch will be paid 35% of the total hourly fees generated in connection with work performed by Firm attorneys and personnel, and 100% of hourly fees generated in connection with work performed by Storch.

- The Firm and the Storch Firm assume joint responsibility for the representation for as long as this fee-sharing agreement is in effect, and the division of fees is based upon this joint responsibility. In accepting joint responsibility, Storch will make reasonable efforts to assure adequacy of representation, provide adequate client communication, respond to client questions, and assist the Firm when necessary. The Firm will keep Storch reasonably informed of the Matter.

10

- You acknowledge and understand that Storch and the Firm are not in or a part of the same firm. You further acknowledge that the total fee to be charged is reasonable, not excessive and not unconscionable considering, among other things, the nature of the fee agreement (contingency fee), the legal expertise involved in the representation, the legal issues involved in the representation, and the amount of work and investment of resources necessary to prosecute your case.

_Settlement_. The Firm will notify you promptly of the terms of any settlement offer received by the Firm.

WAIVER

_Waiver of Future Conflicts with Any Adverse Party_. We may currently or in the future represent one or more other clients in matters that may in some way relate to your current matter. We are undertaking this engagement on condition that we may represent other clients in matters in which we do not represent you, even if the interests of the other clients are adverse to yours, including the appearance on behalf of another client adverse to you in litigation or arbitration, provided of course, that the other matter is not substantially related to our representation of you, and that in the course of representing you we do not obtain confidential information from you material to the representation of the other clients. If our Firm does not continue an engagement or is required to withdraw from a matter due to a conflict of interest, you may incur delay, prejudice, or additional cost associated with acquainting new counsel with the matter.

Your express consent to this arrangement is required, however, because of the arrangement's possible adverse effects on the performance of our duties as attorneys to remain loyal to each client, to maintain client confidences, and to render legal services with vigor and competence.

By your signature below, you hereby waive any right you may have now or in the future to object to, or to disqualify the Firm from, representation of any third party in any future litigation. You further acknowledge that you make this express waiver voluntarily, knowingly, and intentionally, in consideration of the Firm's Agreement to represent you in this matter.

Nothing in this letter permits us to represent in any fashion in this matter a party which is actually adverse to you in this matter. Such action is unethical and something the Firm would never do. Upon engagement by you in this matter, we cannot represent any party whose interests are adverse to yours in this matter. Moreover, the Firm has no present intention or possibility in the future of representing any party which is adverse to you in this action.

11



POTENTIAL TERMINATION OF RELATIONSHIP

Initial Termination of Services. If after our initial investigation and before we file any complaint or notice of any kind, we decide not to continue to represent you in this matter, we shall notify you of that decision and our services will be terminated. After that point there will no longer be an attorney-client relationship between us, and we will not represent you further in this matter.

Moreover, at any time after the execution of this Agreement or any future engagement Agreement or amendment, you agree that we have the right to stop representing you in this matter, consistent with our ethical obligations, and you have the right to terminate our services without cause. If we decide to stop representing you, we shall notify you of that decision, and all of our services in this matter will be terminated.

Withdrawal. The Firm and/or the Storch Firm may withdraw from this engagement at any time permitted by law. The circumstances under which it may be permissible to withdraw include, but are not limited to, the following: (a) upon your consent, or (b) if we determine that you have made a material misrepresentation to the Firm and/or the Storch Firm or omitted to disclose a material fact to the Firm and/or the Storch Firm, or (c) if, in the Firm's and/or the Storch Firm's opinion, your conduct renders it unreasonably difficult for the Firm and/or the Storch Firm to carry out its retention effectively.

In the unlikely event that circumstances make it necessary to do so, we may withdraw with good cause from this engagement for nonpayment of fees or expenses or for any other reason authorized or required by the applicable rules of professional conduct.

If we withdraw due to your misconduct in this matter ("Misconduct", as defined in this paragraph), you will be obligated to pay the Firm and the Storch Firm their fees at the Firm's and the Storch Firm's Standard Hourly Rates. For the purposes of this paragraph, Misconduct shall only mean a misrepresentation or material omission by you, illegal or unethical conduct in the matter, or engagement in conduct which, in the opinion of the Firm and/or the Storch Firm, endangers the reputation of the Firm and/or the Storch Firm.

We hope that this relationship continues for the life of this matter, and we would only terminate our services consistent with our ethical obligations.

Client's Termination of Services. You are, of course, entitled to terminate this engagement for any reason, subject to the Firm's right to be paid for services already rendered and expenses already incurred on your matter or any other service the Firm has provided for you.

If you decide to terminate the Firm without actual good cause shown, and without such specific cause or causes made explicit to us in writing, we shall still be due, regardless of whether we were providing you services at the time of any successful result of any kind (settlement or otherwise), our attorneys' fees. Our attorneys' fees shall be, at the Firm's sole discretion, either the fees as provided for in this engagement letter, including, but not limited to, the Success Fee, or our fees on an hourly rate basis for the services of any employees or

12



affiliates of the Firm calculated at the Firm's and Storch's non-discounted hourly rates. The Firm shall also be due full reimbursement for all costs expended in any way on your behalf.

The Firm reserves all rights, including the right to litigate to seek any unpaid fees, should we so choose.

We obviously hope that neither side will seek to terminate the relationship. While the fee arrangement described in this Agreement otherwise controls, if either of us does decide to terminate the relationship, we agree to discuss the best way to resolve any fee arrangement.

## ARBITRATION REGARDING A FEE DISPUTE

In the event that a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which is attached to this Agreement.

## COOPERATION AND TRUST

Having reviewed the Statement of Client Rights and the Statement of Client Responsibilities sent to you with this Agreement, <u>you agree to cooperate and fully participate in the conduct of any matter in which we provide services to you, including providing us with information we need in order to adequately represent you and provide the services you wish.</u>

Such cooperation also includes, but is not limited to:

- reasonably being available for phone calls;
- promptly responding to any correspondence we send to you, including e-mails;
- raising issues of concern with us, of any kind, promptly, respectfully, and without delay;
- devoting your own time necessary to work with us to achieve as successful a resolution as possible in your matter;
- being available to review drafts of documents, should we request, **which you acknowledge are sent to you in draft form.**
- promptly providing truthful and complete responses to any requests for information, and not failing to disclose information or omitting information of any kind whatsoever which is material to the matter or to our attorney-client relationship; **you promise to provide this information even if you believe you have previously disclosed the requested information** (such repeated requests are commonplace and necessary, particularly at the beginning of a matter, so that we fully understand the facts and can be the best advocates we can be for your position);
- trusting that we will always endeavor to have our Firm take whatever steps we believe necessary, and spend whatever time is warranted, in order to provide you with superior legal representation and counseling (we are organized to be efficient, and shall always strive to be, but will not be so at the expense of quality work product or our ethical obligations);

13

- being prepared to push this case to trial or arbitration if necessary (unless we agree in writing that the engagement is for a limited purpose, you should NOT engage us unless you are prepared to go the distance in this matter and push the case to arbitration or trial);
- committing to engage only in legal and ethical conduct, and conduct which comports with any applicable laws, rules, and regulations.
- considering in good faith all settlement proposals offered in connection with the claims or potential claims;
- providing documents relating to claims, producing such documents in discovery, and attending any deposition and/or legal proceedings, if necessary.

Your cooperation as outlined in this paragraph is a material and substantive inducement to the Firm and Storch to take this matter on a contingency fee basis, and your failure to cooperate shall constitute sufficient grounds for the Firm and/or Storch to withdraw and seek recovery of its Unpaid Fees incurred to that point as if the Firm and Storch were being paid on an hourly basis in full instead of on a partial contingency basis. Likewise, you recognize and understand that most cases in the United States are resolved by way of compromise settlement at some point during the litigation process, and agree not to unreasonably refuse any good faith settlement proposal offered.

### DESIGNATION OF U.S. AGENT

You hereby designate Jonathan Bernstein as your exclusive authorized client representative in the United States with sole client decision-making authority over strategic matters relating to this contemplated litigation, insofar as client direction is required. It is hereby agreed that the Firm and the Storch Firm may rely on Mr. Bernstein's authority and Mr. Bernstein's authority alone in making client decisions relating to litigation strategy and case management, and that the Firm and the Storch Firm shall not be required to seek additional authorizations from other client representatives or partners. The foregoing authorization shall remain in effect until such time as the Firm and the Storch Firm shall receive written notice that Mr. Bernstein has ceased to be a partner in the Company.

Nothing shall preclude the Firm or the Storch Firm from seeking the input of and/or guidance from other client representatives, though Mr. Bernstein's final authority nonetheless remains. Moreover, we shall be responsive to any inquiries or requests to information of any kind, at any time, from all of you.

### INDEMNIFICATION

You agree to indemnify and hold harmless the Firm, Storch, and the Storch Firm from any and all actions, suits, proceedings, and investigations brought by third parties for damages, obligations, penalties, judgments, awards, liabilities, costs, expenses and/or disbursements directly or indirectly caused by, relating to, based upon, arising out of, and/or in connection with your engagement of services by the Firm. Your obligations to indemnify the firm shall not apply under those circumstances where there has been a finding of ethical or legal misconduct by the Firm.


This provision shall in no way limit your right to bring a legal malpractice claim against the Firm to the extent permitted by law.

## ENTIRE AGREEMENT AND SEVERABILITY

This Agreement, together with Exhibit A, which is incorporated by reference as if fully set forth herein, contains the entire understanding of you and the Firm with regard to our provision of services to you. If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

## INDEPENDENT COUNSEL

You acknowledge that you had sufficient time to review this Agreement and consult with other attorneys or advisors concerning this Agreement if you so desire, and that you have freely determined to execute this Agreement without duress.

## AUTHORITY

By signing this Agreement, you acknowledge and confirm that you are bound to the terms of this Agreement and you are, in fact, bound to such terms. You also acknowledge that you personally undertake and assume the full performance hereof, including payments of amounts hereunder.

## COMMUNICATION

It is important to us that our clients be aware of the progress of their matters, and that they have the full opportunity to ask us any questions that may arise. Accordingly, we hope you will feel free to contact us — either in our office, on our mobile phones, or via e-mails — with any questions, whether relating to the case, your invoices, the fees, or anything else regarding our relationship.

## SCOPE AND ENFORCEMENT OF THIS AGREEMENT

This Agreement may not be amended, waived, or modified without the mutual written consent of all of the parties hereto. This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to any applicable principles of conflicts of law. If any dispute or claim between the parties shall arise, the parties shall submit to and have such shall be settled by arbitration administered by the American Arbitration Association, in New York before one arbitrator, in accordance with its Commercial Arbitration Rules ("Arbitration Rules"), and judgment on the award rendered by the arbitration may be entered in any court having jurisdiction thereof.

Notwithstanding any provision in those Arbitration Rules, each party shall pay its own professional service fees (including attorney's fees) and costs related to the arbitration, and New York law shall apply to the extent possible, including regarding any claims or defenses.


It is understood and agreed that this Agreement may be executed in identical counterparts and may be transmitted by facsimile or e-mail, each of which shall be deemed an original for all purposes.

By signing this Agreement, Juan Diaz Rivera confirms that he has the right and authority to bind Desarrolladora Farallón, S. de R.L. de C.V. to the terms of this Agreement and Juan Diaz Rivera is, in fact, binding Desarrolladora Farallón, S. de R.L. de C.V. to such terms.

Besides signing below, please write your initials and the date on every page of this agreement. If you have any questions about anything at all, please do not hesitate to contact us. We look forward to fighting for you and being your advisor.

Sincerely,

_/s/ John G. Balestriere_____       March 17, 2015
John Balestriere                                            Date
Balestriere Fariello

_/s/ Adina G. Storch_____            March 17, 2015
By: Adina G. Storch                                      Date
Law Offices of Adina G. Storch, PLLC

The above is understood and agreed to:

_____            _____
Juan Diaz Rivera, on behalf of                    Date
Desarrolladora Farallón, S. de R.L. de C.V.

_____            _____
Juan Diaz Rivera, on behalf of himself          Date

_____            _____
Juan Diaz Rivera, on behalf of                    Date
Farallon/HVI Development, LLC

_____            5/15/15
Jon Bernstein                                            Date

cc:     Rachel Davidson (via email: rachel@bernsteincorp.com)
cc:     Leticia Diaz Rivera (via email: leticia@pedregal.com)
cc:     Manuel Diaz Rivera (via email: manuel@pedregal.com)
cc:     Adina G. Storch (via email: agsparis@yahoo.com)


## *Statement of Client's Rights*
(As Adopted by the Administrative Board of the Courts)

1. You are entitled to be treated with courtesy and consideration at all times by your lawyer and the other lawyers and personnel in your lawyer's office.

2. You are entitled to an attorney capable of handling your legal matter competently and diligently, in accordance with the highest standards of the profession. If you are not satisfied with how your matter is being handled, you have the right to withdraw from the attorney-client relationship at any time (court approval may be required in some matters and your attorney may have a claim against you for the value of services rendered to you up to the point of discharge).

3. You are entitled to your lawyer's independent professional judgment and undivided loyalty uncompromised by conflicts of interest.

4. You are entitled to be charged a reasonable fee and to have your lawyer explain at the outset how the fee will be computed and the manner and frequency of billing. You are entitled to request and receive a written itemized bill from your attorney at reasonable intervals. You may refuse to enter into any fee arrangement that you find unsatisfactory. In the event of a fee dispute, you may have the right to seek arbitration; your attorney will provide you with the necessary information regarding arbitration in the event of a fee dispute, or upon your request.

5. You are entitled to you have your questions and concerns addressed in a prompt manner and to have your telephone calls returned promptly.

6. You are entitled to be kept informed as to the status of your matter and to request and receive copies of papers. You are entitled to sufficient information to allow you to participate meaningfully in the development of your matter.

7. You are entitled to have your legitimate objectives respected by your attorney, including whether or not to settle your matter (court approval of a settlement is required in some matters).

8. You have the right to privacy in your dealings with your lawyer and to have your secrets and confidences preserved in the extent permitted by law.

9. You are entitled to have your attorney conduct himself or herself ethically in accordance with the Code of Professional Responsibility.

10. You may not be refused representation on the basis of race, creed, color, age, religion, sex, sexual orientation, national origin or disability.



## *Statement of Client's Responsibilities*

Reciprocal trust, courtesy and respect are the hallmarks of the attorney-client relationship. Within that relationship, the client looks to the attorney for expertise, education, sound judgment, protection, advocacy, and representation. These expectations can be achieved only if the client fulfills the following responsibilities:

1. The client is expected to treat the lawyer and the lawyer's staff with courtesy and consideration.

2. The client's relationship with the lawyer must be one of complete candor and the lawyer must be apprised of all facts or circumstances of the matter being handled by the lawyer even if the client believes that those facts may be detrimental to the client's cause or unflattering to the client.

3. The client must honor the fee arrangement as agreed to with the lawyer, in accordance with law.

4. All bills for services rendered which are tendered to the client pursuant to the agreed upon fee arrangement should be paid promptly.

5. The client may withdraw from the attorney-client relationship, subject to financial commitments under the agreed to fee arrangement, and, in certain circumstances, subject to court approval.

6. Although the client should expect that his or her correspondence, telephone calls and other communications will be answered within a reasonable time frame, the client should recognize that the lawyer has other clients equally demanding of the lawyer's time and attention.

7. The client should maintain contact with the lawyer, promptly notify the lawyer of any change in telephone number or address and respond promptly to a request by the lawyer for information and cooperation.

8. The client must realize that the lawyer need respect only legitimate objectives of the client and that the lawyer will not advocate or propose positions which are unprofessional or contrary to law or the Lawyer's Code of Professional responsibility.

9. The lawyer must be unable to accept a case if the lawyer has previous professional commitments which will result in inadequate time being available for the proper representation of a new client.

10. A lawyer is under no obligation to accept a client if the lawyer determines that the cause of the client is without merit, a conflict of interest would exist or that a suitable working relationship with the client is not likely.

18



**Attorney-Client Fee Dispute Resolution Program**

The New York State court system has established a Statewide Fee Dispute Resolution Program (FDRP) to resolve attorney-client disputes over legal fees through arbitration (and in some cases mediation). See the full program description here (http://www.nycourts.gov/admin/feedispute/pdfs/FD_brochure.pdf).

The FDRP is made up of a network of State-approved and monitored local programs that resolve attorney-client fee disputes outside of court through arbitration. Arbitration is a hearing conducted by one or more neutral persons who have special training and experience. One arbitrator or a panel of three arbitrators (at least one of whom must be a non-lawyer) listen to the arguments on both sides and decide the outcome of the dispute. Fee arbitration is fair, inexpensive and usually faster than going to court.

In addition to arbitration, some local programs may offer mediation. This is a process by which both sides meet with the assistance of a trained mediator to clarify issues and explore options for a mutually acceptable resolution. Mediation provides the opportunity for you and your attorney to discuss your concerns and reach a satisfactory result without going to court. Unlike an arbitrator, the mediator does not issue a decision. Participation in mediation is voluntary for your attorney and you, and it does not waive your right to arbitration. If you are interested in resolving your dispute through mediation, you may indicate this on the Request for Arbitration form. However, not every local program offers mediation.

The FDRP's Board of Governors has approved a number of local programs which administer the FDRP on a region by region basis. These local programs are run by bar associations or by the court system's regional Administrative Judges. All local programs have been carefully reviewed to ensure that they will resolve fee disputes in a fair, impartial and efficient manner.

In general, your lawyer may not sue you in court over a fee dispute unless he or she first provided you with notice of your right to utilize the FDRP. Once you have received this notice you have 30 days to decide whether to use the FDRP. If you don't choose to participate in the FDRP within 30 days, your lawyer is free to pursue the matter in court.

Fee dispute resolution services are provided by local programs throughout New York. The local program is determined by where the majority of legal services were performed. Find your local program (http://www.courts.state.ny.us/admin/feedispute/local_programs.shtml) and download the local program's rules and forms.

Please note that the FDRP's jurisdiction is limited to resolving attorney-client disputes over legal fees.

- The FDRP cannot address claims of lawyer misconduct.
- The FDRP cannot address claims of lawyer malpractice.
- The FDRP applies when:
  - Your attorney practices in New York and your case involved a civil matter.



BALESTRIERE
FARIELLO

- o The amount in dispute is between $1,000 and $50,000 (fee disputes can involve fees that you have already paid your attorney and for which you seek a refund, or fees that your attorney claims are owed by you).
- o The legal representation began on or after January 1, 2002.
- o Your attorney has rendered services to you within two years prior to the filing of the request for fee arbitration.

If you believe that your attorney committed malpractice in your case, you should not utilize the FDRP because it is possible that an arbitration decision against you with regard to the fee dispute could adversely affect your ability to pursue malpractice in court at a later date.

If you believe attorney misconduct or malpractice is present in your case, please find contact information for the appropriate Grievance Committee (http://www.courts.state.ny.us/ip/attorneygrievance/complaints.shtml).

www.balestrierefariello.com          225 Broadway, 29th Floor          New York, New York 10007

# Exhibit C

# CAPITALIZATION AGREEMENT

This CAPITALIZATION AGREEMENT (this "Agreement"), is entered into this 5 day of November, 2014 (the "Effective Date"), by and between Desarrolladora Farallon, S. de R.L. de C.V. ("Farallon"), and White Lilly, LLC ("Lilly"; Lilly and Farallon, each, a "Party", and collectively, the "Parties").

RECITALS

WHEREAS, as of May 17, 2006, Farallon, a Mexican *sociedad de responsabilidad limitada de capital variable*, entered into that certain CP Project Trust Governance Agreement (the "Trust Agreement"), attached hereto as **Exhibit A**, together with Farallon/HVi Development, a Delaware limited liability company ("FHD", and together with Farallon, the "Farallon Parties") and ███████ ██████ ("██████", and together with Farallon and FHD, the "Trust Participants");

WHEREAS, the Trust Agreement sets forth the agreement between the Trust Participants regarding the ownership and operation of the Capella Resort Project in Cabo San Lucas (the "Project"), as more particularly described in the Trust Agreement;

WHEREAS, according to the Trust Agreement, Farallon holds a 55.22% membership interest (the "Farallon Interest"), and ████████ holds a 44.78% membership interest, in the Project;

WHEREAS, FHD is the venture manager of the Project;

WHEREAS, the majority member of ████████ is ██████████████████ ("██████"), and the minority member of ████████ is ████████████████████████ ("████████", and together with ██████ and all holders of any direct or indirect interests in ████████, each a "████████ Entity", and collectively, the "████████ Entities");

WHEREAS, the Trust Participants financed the Project in part with debt from WestLB AG ("WestLB"), with a loan (the "Approved Loan") having a principal amount of Sixty Million and 00/100 United States Dollars ($60,000,000.00 USD);

WHEREAS, the Approved Loan was secured by, and some proceeds from the Approved Loan would be used as construction financing for, the Project;

WHEREAS, WestLB funded fully the Approved Loan;

WHEREAS, the Trust Participants approved the funding of a debt shortfall of approximately $68,000,000.00 on an interim basis through the Trust Agreement, which allowed for partner loans at a 15% preferred rate of return from ██████████████████, which partner loans are hereinafter referred to as the "Mezzanine Loan";

WHEREAS, without the required consent of the Farallon Parties, the ████████ Entities caused WestLB to assign the Approved Loan to a ████████ Entity, ██████████████████████, (the "Unapproved Lender", and the assigned loan, the "Unapproved Senior Loan");

WHEREAS, the ████████ Entities refuse to refinance the Unapproved Senior Loan or the Mezzanine Loan;

WHEREAS, the ████████ Entities are using their position as the Unapproved Lender to control

the Project;

WHEREAS, the Parties plan to bring suit against the ███████ Entities in the United States, which may include as counterclaims to the complaint filed in the Supreme Court of the State of New York, County of New York, by ███████████████████████, as the plaintiff, against Hotelles Del Cabo S de RL de CV, Desarrolladora Farallon, S. de RL de DV, Farallon/HVI Devlopment, LLC, ███████, S. de RL de DV, and Juan Diaz Rivera, as the defendants (collectively, the "<u>Litigation</u>") to pursue the rights and remedies of Farallon with regards to the Project;

WHEREAS, the Parties agree that Farallon and Lilly will form a joint-venture (the "<u>Farallon-Lilly JV</u>") to own the Farallon Interest, as may be adjusted pending the outcome of the Litigation; and

WHEREAS, the Parties have agreed to capitalize the Litigation on the terms and conditions in this Agreement.

A G R E E M E N T

NOW WHEREFORE, in consideration of the promises and the exchange of mutual covenants in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

1. **Recitals**.  Farallon represents and warrants that the foregoing recitals are true and correct.

2. **Definitions.**  Capitalized terms not defined in this Agreement shall have the meaning assigned in the Trust Agreement.

3. **Litigation Capitalization.**

   a. Subject to the terms and conditions set forth in this Agreement, the Parties each agrees to contribute money (the "<u>Capital</u>") in an amount of up to Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00), for a total of up to One Million Five Hundred and 00/100 Dollars ($1,500,000.00) in the aggregate, to pay for actual costs and Reduced Fees associated with the Litigation, including without limitation  reasonable out of pocket expenses pursuant to the "<u>Legal Representation Agreement</u>" and a projected budget, between the Parties and the attorneys described therein (the "<u>Litigators</u>"), attached as **Exhibit E**, which the Parties agree sets forth their mutual understanding of the costs and expenses of the Litigation.  The Parties agree to contribute the Capital (each such contribution, a "<u>Capital Contribution</u>"), on an equal basis into such account and at such bank designated by the payee, per the agreed upon calendar.

   b. Within twenty-four (24) hours of the execution of the engagement agreement with Balestriere PLLC, Farallon and Lilly shall each wire One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,000.00), for a total of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00), to:

   Bank name: Chase
   Account name: **Balestriere PLLC**
   Firm Address: 225 Broadway, Suite 2900, New York, NY 10007
   ABA/Routing number: ███████
   Account number: ███████

SWIFT Code: CHASUS33
Bank Address: 253 Broadway 1st Floor, New York, NY 10007
Bank Main Number: 212-577-7020

   c. Lilly shall maintain a current schedule showing the capital account (the "Capital Account") of each Party, which shall provide the net total of the Capital Contributions made by each Party, as adjusted pursuant to Section 9.

4. **Return of Capital.** Subject to Section 9, the Parties agree that any and all sums received by the Parties, or any person or entity owning a direct or indirect interest therein, and which sums are in any way related to the Project or the Litigation, including without limitation any refinancing proceeds, cash flow, property, or any other payment in cash or in kind, shall be disbursed as follows:

   a. First, *pari passu*, in an amount equal to a fraction, which shall be:

      i. To Farallon: a numerator equal to Farallon's Capital Account plus the Farallon Valuation, over the denominator equal to the total of Farallon and Lilly's Capital Accounts and the Farallon Valuation. The Parties agree that the value allocated in the Project to Farallon for all of its contributions prior to the Effective Date, including without limitation cash, personal property, and real property, is Ten Million and 00/100 Dollars ($10,000,000.00) (the "Farallon Valuation"); and

      ii. To Lilly: a numerator equal to Lilly's Capital Account, over the denominator equal to the total of Farallon and Lilly's Capital Accounts and the Farallon Valuation

until (A) each party has received a full reimbursement of the total amount of Capital it contributed, and (B) Farallon has received a full return of the Farallon Valuation; and

   b. Second, *pari passu*, fifty percent (50%) to Farallon, and fifty percent (50%) to Lilly (each 50%, a "Party Interest"). The respective membership interest of Farallon and Lilly shall be adjusted in the operating agreement of the Farallon-Lilly JV to reflect the Party Interests set forth in the first sentence of this Section 4(b).

5. **Litigation Management.**

   a. **Litigation Director.** Jonathan Bernstein, Esq., as the managing member of Lilly shall direct the Litigation, and manage the relationship set forth in the Legal Representation Agreement.

   b. **Farallon.** Juan Diaz Rivera ..

   c. **Conference Calls**. The Parties agree to discuss the status of the Litigation on conference calls, with greater or less frequency, as appropriate.

   d. **Access to Litigators**. Will be free and unencumbered for all parties as it pertains to document requests.

6. **Unanimous Consent.** The Parties agree that all decisions to settle the Litigation must be in writing, consented to by both Parties, which consent shall not be unreasonably withheld.

7. **Representations, Warranties, and Covenants of Farallon.** In connection with this Agreement, Farallon hereby makes the following representations, warranties, and agreements and confirms the following understandings:

    a. **Recitals.** The recitals set forth above are true, correct, and complete as of the Effective Date, and Farallon covenants to keep Lilly informed of any changes in circumstances or facts that impact any recital.

    b. **Trust Agreement.** Farallon has provided Lilly with a true, correct, and complete copy of the Trust Agreement, which is attached hereto as **Exhibit A**, and the Trust Agreement has not been amended or modified except as set forth therein. Farallon covenants (i) to provide Lilly with prompt notice of all proposed modifications or amendments to the Trust Agreement, (ii) not to assign its interest in the Trust Agreement without Lilly's prior written consent, and (iii) not to agree, or to permit any of its affiliates or assigns to agree, to any amendment or modification of the Trust Agreement without Lilly's prior written consent provided Lilly has funded pari pasu.

    c. **Review and Evaluation of Information Regarding the Project.** Lilly has requested all available information as to the operations and finances of the Project, in order to evaluate accurately the merits and risks of contributing Capital and entering into this Agreement. Farallon understands that Lilly enters this Agreement in reliance on Farallon's provision of true, correct, and complete information regarding the operations and finances of the Project. Farallon has provided substantial information regarding the project, correspondence between Farallon, Trustees, ██████████████████ representatives, trust documents, amendments, promissory notes and a trove of other related information, Lilly has reviewed these documents regarding the Project as well as those that are attached to this Agreement, and has not been provided with any other information about the Project's operations or finances.

    d. **Prohibitions on Cancellation, Termination, Revocation, Transferability, and Assignment.** Farallon hereby acknowledges and agrees that, except as may be specifically provided herein or by applicable law, Farallon is not entitled to cancel, terminate, or revoke this Agreement, and this Agreement shall survive dissolution of Farallon or any assignment of the interest in the Project of Farallon or any holder of any direct or indirect interest therein.

    e. **No Default.** Farallon has timely satisfied all of its obligations under the Trust Agreement.

    f. **Organizational Structure of Project Owner.** A true, correct, and complete copy of the organizational chart (the "Organizational Chart") of the owner of the Project, effective upon execution of this Agreement, is attached hereto as **Exhibit B**.

    g. **Encumbrances on Interest.** The title to Farallon's interest in the Project is good and marketable, and subject to no liens or encumbrances whatsoever, except for those liens resulting from the Unapproved Loans, as more particularly described on **Exhibit F**, the "Permitted Encumbrances".

    h. **Authorization to Enter Agreement.** Farallon has taken all necessary action to authorize the execution, delivery and performance of this Agreement and has the full power and authority

to execute and deliver this Agreement and consummate the transaction contemplated hereby, and no further consent or approval by any other person or entity is required for performance of any obligations or exercise of any rights contemplated by this Agreement. The person signing this Agreement on behalf of Farallon is authorized to do so, as provided in the power of attorney attached hereto as Exhibit H, which authorizes Juan Diaz Rivera to execute this document on behalf of Farallon and its affiliates. Assuming this Agreement has been duly authorized, executed and delivered by each of the other parties to this Agreement, this Agreement and all respective obligations Farallon hereunder are the legal, valid and binding obligations of Farallon, enforceable in accordance with the terms of this Agreement, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law);

  i. **Due Formation**. Farallon was duly organized and is in good standing under the laws of the jurisdiction of its formation;

  j. **No Conflict**. The execution and delivery of this Agreement and the performance of its obligations hereunder by Farallon will not conflict with any provision of any law or regulation to which Farallon is subject or any agreement or instrument to which Farallon is a party or is bound, or any order or decree applicable to Farallon, or result in the creation or imposition of any lien on any of Farallon's assets or property which would materially and adversely affect the ability of Farallon to carry out the terms of this Agreement. Farallon has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery or performance by Farallon of this Agreement;

  k. **No Blocked Persons**. Farallon is not acting directly or indirectly for or on behalf of any, person, group, entity or nation named by any Executive Order of the United States Treasury Department as a terrorist, "Specifically Designated National and Blocked Persons," or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation that is enforced or administered by the Office of Foreign Assets Control. Farallon is not engaged in this transaction, directly or indirectly, on behalf of any such person, group, entity, or nation;

  l. **No Attachments**. No attachments, executions, or other writs of process have been issued against Farallon's interest in the Project;

  m. **No Bankruptcy**. Farallon has not, nor to Farallon's knowledge have any of the other Trust Participants, filed any petition in bankruptcy, nor has any petition in bankruptcy been filed against either of them. Neither Farallon nor any of the other Trust Participants have been adjudicated bankrupt;

  n. **Pending or Threatened Litigation**. All litigation pending (i.e., legal actions, arbitrations or governmental proceedings or investigations known to Farallon) or threatened in writing against Farallon, any of the other Trust Participants, and the Project, including the proposed Litigation as described in this Agreement, is set forth on **Exhibit G**, the "List of Pending or Threatened Litigation";

  o. **No Misrepresentation**. No statement of fact made by Farallon to Lilly in this Agreement contains any untrue statement of material fact or omits to state any material fact necessary to make statements contained herein misleading. There is no material fact presently known to Farallon which has not been disclosed to Lilly and set forth in this Agreement which adversely affects, nor as far as Farallon can foresee, might adversely affect, the Agreement, the Trust Agreement, or the Project and the operation thereof;

p.  **Project Balance Sheet.**  The Project's financial liabilities as set forth on **Exhibit C**, the "Project Balance Sheet", are true, correct, and complete as of the Effective Date, and **Exhibit C** fairly represents the current financial condition of the Project as of the Effective Date;

q.  **Farallon's Balance Sheet.**  The Project's financial liabilities as set forth on **Exhibit D**, the "Farallon Balance Sheet", are true, correct, and complete as of the Effective Date, and **Exhibit D** fairly represents the current financial condition of the Project as of the Effective Date; and

r.  **Sophisticated Parties.**  Farallon:

   i.  whether independently or through agents of its choosing, has had a full opportunity to inspect and investigate each and every aspect, including without limitation all documents or agreements of significance and all other matters of material significance related to the transaction contemplated by this Agreement;

   ii.  has conferred with and is represented by counsel in connection with the transaction contemplated by this Agreement;

   iii.  is a sophisticated party with (A) financial wherewithal to bear any risks which may be associated with the transaction contemplated by this Agreement, and (B) experience and expertise sufficient to understand and perform the obligations set forth in this Agreement;

   iv.  freely enters into this Agreement, with reliance solely based on its own expertise and the advice of its counsel; and

   v.  **ACKNOWLEDGES AND AGREES THAT THE FARALLON VALUATION IS FAIR AND REASONABLE, SUFFICIENT AND ADEQUATE UNDER ALL OF THE CIRCUMSTANCES**.

_____ **INITIAL**

8.  **Representations, Warranties, and Covenants of Lilly.**  In connection with this Agreement, Lilly hereby makes the following representations, warranties, and agreements and confirms the following understandings:

a.  **Organizational Structure of Lilly**.  Lilly is a single-member limited liability company, wholly owned and managed by Jonathan Bernstein, who anticipates distributing a minority interest in Lilly to Rachel Davidson;

b.  **Authorization to Enter Agreement**.  Lilly has taken all necessary action to authorize the execution, delivery and performance of this Agreement and has the full power and authority to execute and deliver this Agreement and consummate the transaction contemplated hereby, and no further consent or approval by any other person or entity is required for performance of any obligations or exercise of any rights contemplated by this Agreement.  The person signing this Agreement on behalf of Lilly is authorized to do so.  Assuming this Agreement has been duly authorized, executed and delivered by each of the other parties to this Agreement, this Agreement and all respective obligations of Lilly hereunder are the legal, valid and binding obligations of Lilly, enforceable in accordance with the terms

of this Agreement, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law);

c. **Due Formation**. Lilly was duly organized and is in good standing under the laws of the jurisdiction of its formation;

d. **No Conflict**. The execution and delivery of this Agreement and the performance of its obligations hereunder by Lilly will not conflict with any provision of any law or regulation to which Lilly is subject or any agreement or instrument to which Lilly is a party or is bound, or any order or decree applicable to Lilly, or result in the creation or imposition of any lien on any of Lilly's assets or property which would materially and adversely affect the ability of Lilly to carry out the terms of this Agreement. Lilly has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery or performance by Lilly of this Agreement;

e. **No Blocked Persons**. Lilly is not acting directly or indirectly for or on behalf of any, person, group, entity or nation named by any Executive Order of the United States Treasury Department as a terrorist, "Specifically Designated National and Blocked Persons," or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation that is enforced or administered by the Office of Foreign Assets Control. Lilly is not engaged in this transaction, directly or indirectly, on behalf of any such person, group, entity, or nation;

f. **No Assets**. As of the Effective Date, Lilly owns no assets other than Lilly's interest in this Agreement;

g. **No Bankruptcy**. Lilly has not filed any petition in bankruptcy, nor has any petition in bankruptcy been filed against Lilly. Lilly has not been adjudicated bankrupt;

h. **Pending or Threatened Litigation**. There is no litigation pending (i.e., legal actions, arbitrations or governmental proceedings or investigations known to Lilly) or threatened in writing against Lilly, except the proposed Litigation as described in this Agreement;

i. **No Fee Sharing**. Neither Lilly nor Jonathan Bernstein have an agreement with the Litigators to share in the legal fees earned under the Legal Representation Agreement attached as **Exhibit E**;

j. **No Misrepresentation**. No statement of fact made by Lilly to Farallon in this Agreement contains any untrue statement of material fact or omits to state any material fact necessary to make statements contained herein misleading. There is no material fact presently known to Lilly which has not been disclosed to Farallon and set forth in this Agreement which adversely affects, nor as far as Lilly can foresee, might adversely affect, the Agreement, the Project or the operation thereof; and

k. **Sophisticated Party**. Lilly:

   i. has conferred with and is represented by counsel in connection with the transaction contemplated by this Agreement;

   ii. is a sophisticated party with (A) financial wherewithal to bear any risks which may be associated with the transaction contemplated by this Agreement, and (B)

experience and expertise sufficient to understand and perform the obligations set forth in this Agreement;

  iii. freely enters into this Agreement, with reliance solely based on its own expertise and the advice of its counsel; and

  iv. acknowledges and agrees that the Farallon Valuation is fair and reasonable, sufficient and adequate under all of the circumstances.

_____ **INITIAL**

9. **Default**.

  a. If a Party fails to make a Capital Contribution timely as required pursuant to <u>Section 3</u> in the amount specified therein (such Party is hereinafter referred to as a "<u>Non-Contributing Party</u>"), the non-defaulting Party shall give notice of such failure to the defaulting Party, which notice shall state the amount of the Capital Contribution not funded by the Non-Contributing Party (such amount is hereinafter referred to as the "<u>Failed Capital Contribution</u>"), whereupon the non-defaulting Party may fund all or part of the Failed Capital Contribution (the funding Party is hereinafter referred to as a "<u>Contributing Party</u>", and the amount funded by the Contributing Party, is hereinafter referred to as a "<u>Preferred Return Capital Contribution</u>").

  b. Upon a Contributing Party's funding of a Preferred Return Capital Contribution, then Paragraph 4 of this Agreement shall be deleted in its entirety and replaced with the following:

"4. **Return of Capital.** The Parties agree that any and all sums received by the Parties, or any person or entity owning a direct or indirect interest therein, and which sums are in any way related to the Project or the Litigation, shall be disbursed as follows:

  a. First, to the Contributing Party in an amount equal to two (2) times its Preferred Return Capital Contribution;

  b. Second, *pari passu*, in an amount equal to a fraction, which shall be:

    i. <u>To Farallon</u>: a numerator equal to Farallon's Capital Account less the amount set forth in Section 4(a), as amended, if Farallon is the Non-Contributing Party, plus the Farallon Valuation, over the denominator equal to the total of Farallon and Lilly's Capital Accounts and the Farallon Valuation, as modified pursuant to <u>Section 4b(i)</u> or <u>Section 4b(ii)</u>, as applicable. The Parties agree that the value allocated in the Project to Farallon for all of its contributions prior to the Effective Date, including without limitation cash, personal property, and real property, is Ten Million and 00/100 Dollars ($10,000,000.00) (the "<u>Farallon Valuation</u>"); and

    ii. <u>To Lilly</u>: a numerator equal to Lilly's Capital Account less the amount set forth in <u>Section 4(a)</u>, as amended, if Lilly is the Non-Contributing Party, over the denominator equal to the total of Farallon and Lilly's Capital Accounts and the

Farallon Valuation, as modified pursuant to <u>Section 4b(i)</u> or <u>Section 4b(ii)</u>, as applicable.

until (A) each party has received a full reimbursement of the total amount of Capital it contributed, as modified pursuant to <u>Section 4b(i)</u> or <u>Section 4b(ii)</u>, as applicable, and (B) Farallon has received a full return of the Farallon Valuation, as modified pursuant to <u>Section 4b(i)</u>, if applicable; and

c. Third, *pari passu*, fifty percent (50%) to Farallon, and fifty percent (50%) to Lilly (each 50%, a "<u>Party Interest</u>"). The respective membership interest of Farallon and Lilly shall be adjusted in the operating agreement of the Farallon-Lilly JV to reflect the Party Interests set forth in the first sentence of this <u>Section 4(c)</u>."

10. **Miscellaneous**.

a. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties hereto, and supersedes all prior negotiations, letters and understandings relating to the subject matter hereof.

b. **Amendments.** This Agreement may not be amended, supplemented, or modified in whole or in part except by an instrument in writing signed by both parties.

c. **Successors and Assigns**. Except as otherwise provided herein, this Agreement shall be binding upon and inure to the Parties' benefit and the benefit of the Parties' heirs, executors, administrators, successors, legal representatives, and permitted assigns. If the undersigned is more than one person, the obligation of the undersigned shall be joint and several and the agreements, representations, warranties, and acknowledgements herein contained shall be deemed to be made by and be binding upon each such person and his heirs, executors, successors, administrators, legal representatives, and permitted assigns.

d. **Choice of Law; Venue.** This Agreement will be interpreted, construed, and enforced in accordance with the laws of the State of New York, without giving effect to the application of the principles pertaining to conflicts of laws. Any proceeding arising between the parties in any manner pertaining or relating to this Agreement shall, to the extent permitted by law, be held in New York City, New York.

e. **Severability**. The invalidity, illegality, or unenforceability of any provision or provisions of this Agreement will not affect any other provision of this Agreement, which will remain in full force and effect, nor will the invalidity, illegality, or unenforceability of a portion of any provision of this Agreement affect the balance of such provision. In the event that any one or more of the provisions contained in this Agreement or any portion thereof shall for any reason be held to be invalid, illegal, or unenforceable in any respect, this Agreement shall be reformed, construed, and enforced as if such invalid, illegal, or unenforceable provision had never been contained herein.

f. **Enforcement**. Should it become necessary for either party to institute legal action to enforce this Agreement, the successful party will be awarded reasonable attorneys' fees at all pre-trial, trial and appellate levels, expenses, and costs.

g. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.

h. **Further Assurances.** The parties hereto will execute and deliver such further instruments and do such further acts and things as may be reasonably required to carry out the intent and purposes of this Agreement.

i. **No Assignment**. The parties to this Agreement acknowledge and agrees that no party to this Agreement may transfer or assign any of its rights or interests in this Agreement without the prior written consent of the other parties to this Agreement, granted or withheld in each party's sole discretion.

IN WITNESS WHEREOF, the Parties have executed this Capitalization Agreement as of the Effective Date.

**DESARROLLADORA FARALLON, S. de R.L. de C.V.**,
a Mexican *sociedad de responsibilidad limitada de capital variable*

By:_____

Name:

Title:

**WHILE LILLY, LLC**,
a Delaware limited liability company

By: _____

Jonathan Bernstein

IN WITNESS WHEREOF, the Parties have executed this Capitalization Agreement as of the Effective Date.

**DESARROLLADORA FARALLON, S. de R.L. de C.V.,**
a Mexican *sociedad de responsibilidad limitada de capital variable*

By:_____
Name:
Title:

**WHILE LILLY, LLC,**
a Delaware limited liability company

By: _____
Jonathan Bernstein

# Exhibit D



BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
T: +1-212-374-5400
F: +1-212-208-2613
info@balestrierefariello.com
www.balestrierefariello.com

February 24, 2016

**VIA E-MAIL (juan@pedregal.com, jon@bernsteincorp.com)**

Juan Diaz Rivera
Desarrollos Inmobiliarios Del Pedregal, S.A. De C .V.
Camino De La Plaza No 145
Local 4, El Pedregal
Cabo San Lucas, Los Cabos, B.C.S., MEXICO, C.P. 23453

Jon Bernstein
White Lilly, LLC
5070 PGA Blvd, Suite 204
Palm Beach Gardens, Florida 33418

> Re: *AMENDED* engagement ("Amended Agreement") of services of Balestriere Fariello ("the Firm") for your matter against ███████ ("█████"), and related entities and individuals (the "matter").

Dear Jon and Juan:

This letter amends and adds to the existing agreement the Firm has with Desarrollos Inmobiliarios Del Pedregal, S.A. De C .V. ("Farallon") and White Lilly, LLC ("White Lilly") and collectively referred to here as the Parties, dated March 17, 2015 and attached hereto.

You accept all terms in the previous engagement agreement dated March 17, 2015, attached hereto, unless such terms are specifically changed in this Amended Agreement.

Please take care in reviewing this letter and ask us any questions of any kind you have.

As we can discuss at any time, **we cannot and do not guarantee or represent that we can obtain any particular result, or that the amount of fees or costs or the length of the matter shall be a certain amount**.

FEES, EXPENSES, BILLING, AND PAYMENT

*Previous Deficit*. Upon receipt of any further payments by the Parties, the Firm shall be paid any outstanding fees for services provided in 2015 before paying any expenses on behalf of the Parties.


OUT OF POCKET EXPENSES/EXPERTS

Engagement Letters. On a going forward basis regarding out of pocket expenses, that is, not Firm legal fees, Farallon will sign engagement letters as needed with experts and vendors, and, with the Mexican law experts, Farallon may negotiate some non-cash compensation.

Future Payment for Expenses. Regarding actual payment for such out of pocket expenses, the Parties will pay promptly and, if needed, White Lilly will cover any amount Farallon is not immediately able to cover, specifically, within two weeks of receipt of any invoice. The Firm shall facilitate payment to such experts as you request.

Compliance. Please note, that as of January 31, 2016, there is a very large out of pocket expense that remains payable to one vendor, Compliance Discovery Solutions, in the amount of $166,077.59.

Other expenses, as of January 31, 2016, which have not yet been paid, and for which you shall pay promptly, amount to $88,427.22.

PAST DUE FEES; GOING FORWARD FEES

Catching up on Past Due Fees. The first payment received from the Parties shall be devoted, as needed, to outstanding expenses, but also for the Firm to get fully paid through December 31, 2015. The total legal fees due the Firm through December 2015 is $33,167.60. There is no dispute regarding this amount.

Going Forward Fees. Starting January 1, 2016, White Lilly shall pay its share of fees promptly (within two weeks of receipt of any invoice) and Farallon shall pay what it can of its share of all hourly fees that remain due in any given month. Any amounts received from Farallon in any month shall first be devoted to payment of Farallon's share of fees owed and then, if and only if Farallon can satisfy its outstanding hourly fee obligations to the Firm, any moneys Farallon pays shall be devoted to outstanding out of pocket expenses.

Any unpaid hourly fees shall remain owed to the Firm regardless of any result in this engagement and are not contingent in any way. By the way of an example, if at the end of this year, White Lilly had paid its share of fees but Farallon owes $100 in fees, and the matter were over, or we lost, or the Parties decide to abandon the matter, even if the Firm received no contingency fee at all, Farallon would still owe the Firm $100 in hourly fees.

Interest Terms to Firm Deficit. Any fee balance due at the end of a month which accrues in such month shall have 9.00% of the amount due added to total due fees. Such 9.00% shall only apply to fees accrued and which remain unpaid in a given month. As an example, if in month 1, Farallon's share of fees is $200 and Farallon pays $100, then the total owed entering in month 2 is $109. Then, if in month 2 Farallon accrues $100 in fees but only pays $50, the amount added to Farallon's total due shall be $54.50. Thus, entering month 3, Farallon shall



owe the total owed after month 1 ($109) and the total owed after month 2 ($54.50) or a total of $163.50. This amount shall remain owed until paid and is not contingent.

Collateralizing the Deficit. Farallon will collateralize the debt owed to the Firm by way of a separate agreement to be executed as promptly as possible, and, in any event, no later than February 29, 2016. The terms of such agreement shall in no way relieve the Parties of if its obligations under this Amended Agreement, or the March 17, 2015 Engagement Agreement (as amended by this Agreement). White Lilly and Farallon will enter into a separate collateral agreement as well by March 3, 2016.

AUTHORITY

By signing this Amended Agreement, you acknowledge and confirm that you are bound to the terms of this Amended Agreement and you are, in fact, bound to such terms. You also acknowledge that you personally undertake and assume the full performance hereof, including payments of amounts hereunder.

SCOPE AND ENFORCEMENT OF THIS AGREEMENT

This Amended Agreement may not be amended, waived, or modified without the mutual written consent of all of the parties hereto. This Amended Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to any applicable principles of conflicts of law. If any dispute or claim between the parties shall arise, the parties shall submit to and have such shall be settled by arbitration administered by the American Arbitration Association, in New York before one arbitrator, in accordance with its Commercial Arbitration Rules ("Arbitration Rules"), and judgment on the award rendered by the arbitration may be entered in any court having jurisdiction thereof.

Notwithstanding any provision in those Arbitration Rules, each party shall pay its own professional service fees (including attorney's fees) and costs related to the arbitration, and New York law shall apply to the extent possible, including regarding any claims or defenses.

It is understood and agreed that this Amended Agreement may be executed in identical counterparts and may be transmitted by facsimile or e-mail, each of which shall be deemed an original for all purposes.

By signing this Amended Agreement, Juan Diaz Rivera confirms that he has the right and authority to bind Desarrollos Inmobiliarios Del Pedregal, S.A. De C .V. to the terms of this Amended Agreement and Juan Diaz Rivera is, in fact, binding Desarrollos Inmobiliarios Del Pedregal, S.A. De C .V. to such terms. Jon Bernstein confirms that he has the right and authority to bind White Lilly, LLC to the terms of this Amended Agreement and Jon Bernstein is, in fact, binding White Lilly, LLC to such terms.

Besides signing below, please write your initials and the date on every page of this Amended Agreement.

3



If you have any questions about anything at all, please do not hesitate to contact us.

Sincerely,

/s/ John G. Balestriere    February 24, 2016
John Balestriere       Date
Balestriere Fariello

The above is understood and agreed to:

/s/ Adina G. Storch     February 24, 2016
By: Adina G. Storch     Date
Law Offices of Adina G. Storch, PLLC

The above is understood and agreed to:

_____  25-02-2016
Juan Diaz Rivera, on behalf of himself  Date

_____  25-02-2016
Juan Diaz Rivera, on behalf of   Date
Desarrollos Inmobiliarios Del Pedregal, S.A. De C .V.

_____  _____
Jon Bernstein, on behalf of    Date
White Lilly, LLC

cc: Leticia Diaz Rivera (via email: leticia@pedregal.com)
cc: Adina G. Storch (via email: agsparis@yahoo.com)

4