Jyotin Hamid
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone:     (212) 909-6000
jhamid@debevoise.com

Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:     (212) 374-5421
matthew.schmidt@balestrierefariello.com
*Counsel for Defendants Balestriere PLLC,*
*Balestriere Fariello, and John Balestriere*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **WHITE LILLY, LLC and JONATHAN BERNSTEIN,**<br><br>        Plaintiffs,<br><br>– against –<br><br>**BALESTRIERE PLLC, BALESTRIERE FARIELLO, JOHN BALESTRIERE, THE LAW OFFICES OF ADINA G. STORCH, PLLC, and ADINA STORCH,**<br><br>        Defendants. | Case No.: 1:18-cv-12404(ALC)(SN)<br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE BALESTRIERE PARTIES' MOTION TO CONFIRM ARBITRATIION AWARD AND FOR ATTACHMENT** |

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT ............................................................................................................ 6

   I.   THE COURT SHOULD CONFIRM THE ARBITRAL AWARD UNDER THE FAA ... 6

   II.   THE COURT SHOULD MODIFY THE AWARD TO THE EXTENT THAT THE ARBITRATOR FOUND THAT THE FIRM HAD FORFETIED FEES ......................... 8

   III.   THE COURT SHOULD GRANT AN ATTACHMENT UNDER FRCP 64 AND CPLR 6201 AND 7502 .......................................................................................... 13

      A. The Court Should Grant an Attachment Under CPLR 6201 Because Bernstein is Not a Resident of New York ............................................................................... 14

      B. The Court Should Grant an Attachment Under CPLR 7502 Because Bernstein Has a History of False Statements Under Oath, Showing a Risk That Recovery May Be Ineffectual ...................................................................................................... 14

CONCLUSION ....................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Americas Ins. Co. v. Seagull Compania Naviera, S.A.*,
   774 F. 2d 64 (2d Cir. 1985).................................................................................... 8

*Callaghan v. Callaghan*,
   A.D.3d 500 (2d Dep't 2008) ............................................................................... 9

*Coccia v. Liotti*,
   70 A.D.3d 747 (2d Dep't 2010) ......................................................................... 10

*D.H. Blair & Co. v. Gottdiener*,
   462 F. 3d 95 (2d Cir. 2006)................................................................................. 6

*Doviak v. Finkelstein & Partners*,
   90 A.D.3d 696 (2d Dep't 2011) ........................................................................... 9

*Drexel Burnham Lambert Inc. v. Ruebsamen*,
   139 A.D.2d 323 (1st Dep't 1988) ...................................................................... 14

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
   403 F. 3d 85 (2d Cir. 2005)................................................................................. 7

*Florasynth, Inc. v. Pickholz*,
   750 F. 2d 171 (2d Cir. 1984)............................................................................... 6

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008)............................................................................................ 7

*Hardy v. Walsh Manning Sec., L.L.C.*,
   341 F. 3d 126 (2d Cir. 2003)............................................................................... 8

*Indus. Risk Insurers v. Port Auth. of N.Y. & NJ*,
   493 F. 3d 283 (2d Cir. 2007)............................................................................... 8

*ITC Ent., Ltd. v. Nelson Film Partners*
   714 F. 2d 217 (2d Cir. 1983)............................................................................. 14

*Landau v. Vallen*,
   895 F. 2d 888 (2d Cir. 1990)............................................................................. 14

*Matter of Satin*,
   265 A.D.2d 330 (2d Dep't 1999) ...................................................................... 10

*Matter of Winston*,
    214 A.D.2d 677 (2d Dep't 1995) .................................................................................... 10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*,
    808 F. 2d 930 (2d Cir. 1986) ......................................................................................... 9

*Pessoni v. Rabkin*,
    220 A.D.2d 732 (2d Dep't 1995) .................................................................................. 10

*Quinn v. Walsh*,
    18 A.D.3d 622 (2d Dep't 2005) .................................................................................... 10

*Schwartz v. Merrill Lynch & Co.*,
    665 F.3d 444 (2d Cir. 2011) .......................................................................................... 8

*Shah v. Com. Bank Ob'Edinennyi Investitsionnyi Bank*,
    No. 09 CV 6121(HB), 2010 WL 743043 (S.D.N.Y. Mar. 4, 2010) ......................... 13

*Shelton v. Shelton*,
    151 A.D.2d 659 (2d Dep't 1989) .................................................................................. 9

*Silbiger v. Prudence Bonds Corp.*,
    180 F. 2d 917 (2d Cir. 1950) ........................................................................................ 10

*Telenor Mobile Comm's AS v. Storm L.L.C.*,
    584 F.3d 396 (2d Cir. 2009) .......................................................................................... 7

*United States v. Small*,
    No. 03-CV-13681, 2007 WL 2293028 (E.D.N.Y. Aug. 9, 2007) ............................. 10

*Vidaplan, S.A., Inc. v. Cipriani Int'l, S.A.*,
    No. 06-CV-4930 (KMK), 2006 WL 8461283 (S.D.N.Y. Aug. 7, 2006) ................. 14

*Weiss v. Sallie Mae, Inc.*,
    939 F.3d 105 (2d Cir. 2019) .......................................................................................... 8

*Wiggins v. Kopko*,
    105 A.D.3d 1132 (3d Dep't 2013) ................................................................................ 9

**Statutes**

C.P.L.R. 7502(c) ................................................................................................................. 14

C.P.L.R. 6201(1) ................................................................................................................. 14

Federal Arbitration Act, 9 U.S.C. § 1 ................................................................................. 6

**Other Authorities**

Restatement of Law Governing Lawyers § 37 ............................................................................. 11

**Rules**

Fed. R. Civ. P. 64 ...................................................................................................................... 13

Defendants John Balestriere and Balestriere PLLC d/b/a Balestriere Fariello (together, the "Firm") respectfully submit this memorandum of law in support of their motion to confirm the Final Award of the Arbitral Panel, dated July 23, 2021, with modifications, and for entry of an attachment against Plaintiff Jonathan Bernstein.

## PRELIMINARY STATEMENT

This is a motion to confirm an arbitration Final Award entered in favor of the Balestriere Firm and against Jonathan Bernstein.  After extensive arbitration proceedings, including a 10-day evidentiary hearing, the Arbitrator (1) concluded that Bernstein is liable to the Firm to pay fees and expenses incurred by the Firm in performing legal work for Bernstein; and (2) rejected various of Bernstein's attempts to evade his payment obligation, including his assertion that he was never a client of the Firm and his baseless counterclaims for malpractice, fraud, breach of fiduciary duty, unjust enrichment, and violation of the Judiciary Law (the "Final Award," attached as Exhibit A).  The Arbitrator soundly rejected Bernstein's position that he was a mere agent of a litigation funder who was fraudulently misled into a losing suit by the Firm.  The Arbitrator gave Bernstein 30 days from the Final Award to pay the Award.  This time expired on August 22, 2021, but, as of the date of this filing, Bernstein has neither paid nor given any indication of intent to pay.

This case has gone on long enough and, now that a properly appointed Arbitrator of the American Arbitration Association has issued his Final Award—after a lengthy, full, and fair process—it should now end.   To that end, the Court should confirm the Award, with modifications as detailed below, and the Court should also grant an attachment against Bernstein in the full amount of the judgment.

## STATEMENT OF FACTS[1]

*The Firm Successfully Represents Bernstein Over the Course of Nearly Four Years*

Bernstein signed an initial engagement agreement with the Firm on November 21, 2014, to represent him in connection with multiple actions in state and federal court and international arbitration against Cargill, Inc.; Carval Investors, LLC; Cargill Financial Services International, Inc.; Cargill Soluciones Empresariales, S.A. de C.V., SOFOM, E.N.R.; and Mexvalo, S. de R.L. de C.V. (collectively, the "Cargill Parties"). (Dkt. No. 32-2.) About four months later, on March 17, 2015, Bernstein signed a second engagement agreement, which remained the operative agreement throughout the representation (the "Engagement Agreement"). (Dkt. No. 32-3.) Pursuant to the Engagement Agreement, Bernstein agreed to pay the Firm on a reduced hourly basis plus an additional fee upon any recovery, as defined in the Engagement Agreement. (*Id.* at 2.) The Firm provided extensive legal research, gathered facts, drafted, and revised memoranda concerning legal claims, drafted and transmitted correspondence with adversaries, attended court conferences and arbitration hearings, filed motions and various letters with courts and arbitral tribunals, and litigated many motions in Supreme Court, the District Court, and the International Chamber of Commerce, argued on behalf of the clients in trial courts, argued on behalf of the clients in state and federal appellate courts, took and defended depositions, and tried an arbitration, all under Bernstein's close supervision. (BF Motion at 2–3.) But after the Firm obtained a highly favorable settlement for Bernstein in January 2018, he welched on the deal and refused to pay. (*Id.*)

---

[1] For a more thorough description of the events leading up to this lawsuit as well as the details of the underlying representation, the Firm respectfully refers the Court to the Firm's Pre-Motion Conference Letter (the "PMC Letter"), dated January 7, 2019 (Dkt. No. 25), the Firm's Opposition to Bernstein's Motion for Preliminary Injunction ("BF Opp."), dated January 9, 2019 (Dkt. No. 31), and the Firm's Memorandum of Law in Support of their Motion to Compel Arbitration ("BF Motion"), dated February 5, 2019 (Dkt. No. 43).

*Bernstein Attempts to Avoid Paying His Legal Fees Through Two and a Half Years of Further Litigation*

On September 13, 2018, after months of attempts to negotiate with Bernstein—who during those months repeatedly promised to pay millions of dollars to the Firm for years of legal services—the Firm commenced an arbitration against Bernstein before the American Arbitration Association ("AAA"). (PMC Letter at 2.) Bernstein requested several extensions to respond, ultimately seeking until January 3, 2019, an adjournment to which the Firm agreed. (BF Motion at 3.) The day before that deadline, on January 2, 2019, Bernstein commenced this action seeking to enjoin the arbitration and making a series of not simply false but highly damaging assertions against the BF Parties including that they stole escrow money, defrauded Bernstein and his co-Clients for years, and engaged in malpractice. (PMC Letter at 2–4.) This Court denied Bernstein's preliminary injunction on January 15, 2019, and set a briefing schedule for the Firm's motion to compel arbitration. (BF Motion at 4.) Rather than opposing the Firm's motion to compel arbitration—as Bernstein had done his damage by making his salacious, false, and very damaging public allegations—he instead stipulated on March 5, 2019, to stay this action and submit the matter fully to the AAA. (Dkt. No. 49.)

The arbitration then proceeded, with Bernstein asserting counterclaims, and the parties, after months of negotiations, selecting William H. Baker, Esq., as arbitrator on July 22, 2019. (ICDR Letter Appointing Arbitrator Baker, Ex. B.) Arbitrator Baker was fully appointed on August 7, 2019, after no party made objection to his appointment. (ICDR Letter Regarding Arbitrator Baker, Ex. C.)

*The Arbitration Hearing Commences, and As He Had Done Many Times Before, Bernstein*
*Repeatedly Lies Under Oath*

On April 12, 2021, after nearly two and a half years from commencement of the arbitration, the arbitral hearing commenced. (Dkt. No. 56.) During the hearing, Bernstein made numerous false statements, including insisting that John Balestriere had initially encouraged the litigation, when contemporaneous emails showed Bernstein himself as the instigator. (*See* Appendix A at ¶ 6.)

This was not the first time Bernstein lied. His misstatements included, but were not limited to:[2]

- That invoices were never addressed to Bernstein personally, despite the invoices themselves being addressed to him personally at his own email address; (*id.* at ¶ 11)

- That he had been "insistent on having no personal liability" at the onset of litigation, despite never providing any records of such communications and despite repeatedly signing agreements personally; (*id.* at ¶ 24)

- That he had not learned of funds being transferred out of escrow until June 2018, and was "shocked" upon learning, despite having received an invoice showing such payments months earlier in April 2018; (*id.* at ¶ 17)

- That he had made numerous disputes as to the Firm's invoices, despite being unable to show such disputes at any time with any evidence; (*id.* at ¶¶ 41) and

- That he would never have agreed to bring the underlying actions if he had known the key underlying agreement with the Cargill Parties contained an integration clause, despite possessing the agreement before even engaging the Firm, and having represented in a separate contract that he had personally reviewed the agreement (*id.* at ¶ 38).

This most recent set of false statements to tribunals for reasons of financial gain is not new for Bernstein. Bernstein also admitted at the hearing that he had previously been found to have given false testimony before the New Jersey Casino Control Commission. (New Jersey Casino Control Commission (the "NJ Casino Transcript"), April 22, 1987, Ex. D at 222:3–

---

[2] For a more detailed accounting of Bernstein's false statements, please see Appendix A.

222:8.) At issue was whether Bernstein's client had been aware of the cost of certain improvements to a property it had purchased from a competitor: Bernstein's client claimed that the competitor had concealed the true cost of the improvements. (*Id.* at 228:21–229:10.) Several of the client's key business personnel testified that they had been unaware of the improvement costs, which Bernstein corroborated with his own testimony before the Commission—the competitor's attorneys, on the other hand, insisted that they had fully disclosed the costs in meetings and documents. (*Id.* at 227:1–227:19.) Bernstein specifically corroborated, along with another attorney at his law firm, a number of key disputed facts, including that his client had never seen the sales agreement. (*Id*. at 229:7–229:10.) But after an investigation, the Commission discovered a draft sales agreement in Bernstein's files containing the cost estimates which Bernstein had claimed his client had never seen. (*Id.* at 227:1–227:19.) This contract contained Bernstein's handwritten notation of his client's initials followed by the words "read agreement." (*Id*. at 232:20.) When confronted, Bernstein admitted that he had made the notation, meaning that he had lied under oath contradicted by his own notes. (*Id.* at 233:2–233:8.) The Division's subsequent report explicitly found that "Bernstein was not a credible witness." (*Id*. at 233:11.)

*Arbitrator Baker Issues the Award*

On July 23, 2021, Arbitrator Baker issued the Award, awarding $985,017.66 to the Firm and finding that the Firm has proved its claim for an account stated and its claim for breach of contract against Bernstein to the extent of its unpaid, discounted legal fees and costs. (Award at 3–4.) Arbitrator Baker also found that the Firm proved its claim against Bernstein for breach of the arbitration clause of the engagement agreement by commencing his action before this Court. *Id.* at 48.

The Award also included, respectfully in error, a finding that the Firm forfeited an additional more than $8.4 million that the Firm, under the Arbitrator's analysis, would have been otherwise entitled to had the Firm not transferred out of an escrow account approximately $1.4 million in funds that the Bernstein's co-client had transferred to the account for payment of fees (to which the Arbitrator also found that the Firm was ultimately entitled). (*Id.* at 36–41.) The Arbitrator found for this forfeiture without citation to legal authority or establishing of any causation between the amounts. (*See id.* at 41)

The Arbitrator gave Bernstein 30 days from the Award to pay the Award. (*Id.* at 66.) This time expired on August 22, 2021—as of the date of this filing, Bernstein has neither paid nor given any indication of intent to pay the amount due to the Firm.

## **ARGUMENT**

### I.   **THE COURT SHOULD CONFIRM THE ARBITRAL AWARD UNDER THE FAA**

The Court should confirm the Award with the modification discussed below. Under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), "any party" to an arbitration "may apply to the court so specified" in the relevant agreements "for an order confirming the award, and thereupon the court must grant such an order" unless the Award is vacated or otherwise made moot. 9 U.S.C. § 9; *see* Engagement Agreement at 15 (allowing judgment on an arbitral award to "be entered in any court having jurisdiction"). Confirmation of an arbitration award "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F. 3d 95, 111 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F. 2d 171, 176 (2d Cir. 1984)) (reversing district court's partial vacatur of prejudgment interest on punitive damages and confirming full award, even though such damages explicitly unavailable under law, where arbitrator never informed of such rule). As such, a party

6

seeking to avoid confirmation faces a "heavy" burden as "the showing required to avoid summary conformance is high." *See Telenor Mobile Comm's AS v. Storm L.L.C.*, 584 F. 3d 396, 405 (2d Cir. 2009) (quoting *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F. 3d 85, 90 (2d Cir. 2005)) (affirming confirmation of award even though arbitrator refused to recognize foreign judgment).

Where a party seeks to confirm an arbitration award under the FAA, the FAA's statutory grounds to avoid confirmation are "exclusive." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (summarizing FAA grounds for vacatur as requiring "egregious departures" from "the parties' agreed-upon arbitration"). There are six such grounds:

(1) Where the award was procured by "corruption, fraud, or undue means"; 9 U.S.C. § 10(a)(1)

(2) Where there was "evident partiality or corruption" from the arbitrator; *id.* at § 10(a)(2)

(3) Where the arbitrator was "guilty of misconduct" or "misbehavior"; *id.* at § 10(a)(3)

(4) Where the arbitrator either "exceeded" his powers or "so imperfectly executed" those powers "that a mutual, finite, and definite award" was not made; *id.* at § 10(a)(4)

(5) Where the arbitrator made an "evident material" mistake as to a mathematical calculation or a description of objective facts; *id.* at § 11(a) and

(6) Where the arbitrator issued an unauthorized award on a subject matter not before him *id.* at § 11(b).

Bernstein cannot colorably argue any of the grounds above. He agreed to arbitrate this dispute, was an active participant at all times, himself brought claims and sought multiple orders from the Arbitrator, and did not once during the course of arbitration raise a single objection to the propriety of either the arbitration or the arbitrator. The Firm, in contrast, presents a validly obtained award to a court permitted by the agreement giving rise to the arbitration. The Court should confirm the Award.

## II.     THE COURT SHOULD MODIFY THE AWARD TO THE EXTENT THAT THE ARBITRATOR FOUND THAT THE FIRM HAD FORFETIED FEES

The Court should modify the award to the extent that the Arbitrator awarded fee forfeiture of the contingent portion of the Firm's fees, because the Arbitrator acted in manifest disregard of the law in directing a fee forfeiture that lacked the causation required by the authorities before the Arbitrator. This modification should award the Firm the $8,439,591.50 forfeited, resulting in the total judgment being $9,154,139.32, but also to include pre-judgment interest in the amount of $2,801,166.63 for a total of $11,955,305.95 as of September 3, 2021, and should also award the Firm the $48,595.43 for Bernstein's breach of the arbitration clause and include pre-judgment interest in the amount of $10,772.21 for a total of $59,367.64. The total for both the fee forfeiture as well as the breach of the arbitration clause is $12,014,673.59.

The Court may properly disturb an arbitration award where it was "rendered in manifest disregard of the law." *Weiss v. Sallie Mae, Inc.*, 939 F. 3d 105, 109 (2d Cir. 2019) (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F. 3d 444, 451 (2d Cir. 2011)); *see* 9 U.S.C. § 10(a). This is not an all-or-nothing decision: the Court may modify an award as well. *See D.H. Blair & Co*, 462 F.3d at 104 (recognizing availability of modification); *see also Indus. Risk Insurers v. Port Auth. of N.Y. & NJ*, 493 F. 3d 283, 287–89 (2d Cir. 2007) (same); *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F. 3d 126, 134 (2d Cir. 2003) (same) (quoting *Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F. 2d 64, 67 (2d Cir. 1985) (alteration in original)).

Modification is appropriate here because the Arbitrator respectfully acted in manifest disregard of the law before him. First, finding fee forfeiture without proper causation: the Arbitrator acknowledged that the amounts applied to the past due invoice were owed, and that in his view Balestriere had wrongly relied on a contractual provision which allowed the Firm to apply any escrowed funds to past due amounts. Second, by imposing a partial fee forfeiture for

8

which there is no precedent in law when there are allegations, let alone proven undisputed facts, like those here. This manifestly disregarded the law before him and exceeded his authority. An arbitrator acts in manifest disregard of law when he acts contrary to "well defined, explicit, and clearly applicable" authority. M*errill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F. 2d 930, 934 (2d Cir. 1986).

All the fee forfeiture authority before the Arbitrator stood for the proposition that attorney fee forfeiture was subject to a causation requirement, which was not present in the Arbitrator's decision, nor logically flows from his analysis. This causation requirement necessitates a close connection between the conduct at issue and fees forfeited, essentially voiding fees that arise by improper work. Indeed, the majority of fee forfeiture cases that Bernstein put before the Arbitrator—and the sole case that Bernstein's expert Professor Ellen Yaroshefsky cited—*denied* fee forfeiture. *Shelton v. Shelton*, 151 A.D.2d 659 (2d Dep't 1989) (cited by Professor Yaroshefsky; *denying* fee forfeiture despite conflict of interest); *Wiggins v. Kopko*, 105 A.D.3d 1132, 1135 (3d Dep't 2013) (*denying* forfeiture because lawyer was entitled to fees as "[e]ssentially, the client testified that he had discharged lawyer because he was angry about lawyer's 'distasteful' telephone call"); *Doviak v. Finkelstein & Partners*, 90 A.D.3d 696, 700 (2d Dep't 2011) (*denying* forfeiture as the case rested "on so-called 'errors' which were, in fact, strategic choices which cannot support a discharge for cause"); *Callaghan v. Callaghan*, A.D.3d 500, 501 (2d Dep't 2008) (*denying* forfeiture because attorney was entitled to fees as "dissatisfaction with reasonable strategic choices regarding litigation. . . . do not, as a matter of law constitute cause for the discharge of an attorney").

Of those cases Bernstein cited where fee forfeiture was granted, most of them concerned situations where a fee was forfeited because the underling representation was improperly

9

conflicted, something not even Bernstein—ready to make high volume, demonstrably false allegations—has asserted here. *Silbiger v. Prudence Bonds Corp.*, 180 F. 2d 917 (2d Cir. 1950) (partial fee forfeiture where attorney represented both "surplus series" and "deficit series" bondholders with directly conflicting interests); *Garcia v. Teitler*, 2004 WL 1636982 (E.D.N.Y. July 22, 2004) (attorney simultaneously represented two criminal defendants with conflicting stories); *Quinn v. Walsh*, 18 A.D.3d 622 (2d Dep't 2005) (attorney represented both the driver and passenger in an automobile collision case); *Pessoni v. Rabkin*, 220 A.D.2d 732 (2d Dep't 1995) (attorney represented both driver and passenger in automobile collision case); *Matter of Winston*, 214 A.D.2d 677 (2d Dep't 1995) (attorney represented new client against the express wishes of former client despite conflicting interests).

Bernstein's remaining forfeiture cases all involved other situations where the entire representation itself was fundamentally tainted (not, as here, where the Arbitrator found that there was an account stated based on years of invoices), specifically by failing repeatedly to appear at court conferences; relying on a disbarred colleague to make court appearances; or meeting with an individual. *See, e.g., United States v. Small*, No. 03-CV-13681, 2007 WL 2293028 (E.D.N.Y. Aug. 9, 2007) (attorney failed to attend three court conferences and consulted with his client for only a total of three hours over sixteen months of representing the client); *Coccia v. Liotti*, 70 A.D.3d 747 (2d Dep't 2010) (attorney had a disbarred colleague working on the case and attending court appearances); *Matter of Satin*, 265 A.D.2d 330 (2d Dep't 1999) (attorney met with an individual despite knowing he was represented by counsel).

The other relevant authority before the Arbitrator was the Restatement of Law Governing Lawyers, cited by the Firm for the proposition that forfeiture is "generally inappropriate when

the lawyer has not done anything *willfully blameworthy*." Restatement of Law Governing Lawyers § 37 (emphasis added).

The Arbitrator did not cite in the Award any authority in support of fee forfeiture, nor any evidence which Bernstein presented at Hearing. Bernstein never testified that he thought the moneys were misapplied, or that he did not receive the invoice showing the application of moneys, or that he complained at any time during the subsequent months when he promised to pay the money it was owed. Instead, the Arbitrator relied solely on the testimony of Bernstein's expert, Professor Yaroshefsky, who opined—without relying on any applicable authority—that John Balestriere's conduct concerning escrow funds consisted of behavior that warranted "total fee forfeiture." (Ex. A at 39–40.) The Arbitrator, in finding for forfeiture, applied only general equitable principles, without citation to authority and which were not supported by that authority that had been provided. (*Id.*) Yet in doing so, the Arbitrator found that John Balestriere may have subjectively believed he was contractually permitted to take the funds in question out of escrow. (*Id.* at 38.) In essence, the Arbitrator imposed an $11 million sanction for what he found to be a misunderstanding of a contract, based on no testimony from Bernstein, nor legal authority, and notwithstanding the Firm's expert who testified, based on his review of all relevant communications and agreements, that the Firm had been ethically *required* to withdraw the fees from escrow because they were unambiguously entitled to the fees: failure to do so would have meant commingling of Firm and client funds.

This manifestly disregards the law before the Arbitrator on fee forfeiture in at least three respects. First, it ignores the causational link that was present in all authorities before him where fee forfeiture was granted. In all the forfeiture caselaw presented, the effect of the forfeiture was to not allow an attorney to receive fees for work performed in an unethical manner. That was not

the case here: the Arbitrator awarded forfeiture of the Firm's full success fee of more than $8.4 million because the Firm took approximately $1.4 million from an escrow account in order to pay towards hourly fees owed by Bernstein, and which the Arbitrator affirmed that Bernstein did, in fact, owe. (*See* Award at 26–27.) There is no link between these figures. Indeed, while acknowledging an account was stated, that Balestriere relied on a contractual provision allowing the Firm to apply the moneys received to a past due bill, and that such monies were in fact due to the firm, the Arbitrator contradictorily found that this application of monies to pay fees that were indisputably due justified a fee forfeiture.

Second, the Arbitrator manifestly disregarded the relevant law on fee forfeiture by ignoring it entirely in his analysis. (*See* Award at 39–41.) The Arbitrator made no effort to distinguish any of the authority presented, instead simply relying on Professor Yaroshefsky's bald testimony that "there should be a total fee forfeiture" (without presenting any factors to apply to such a determination), and then applying general equitable principles to determine that the Firm's success fee should be forfeited. (Award at 39, 41.) This constitutes a disregard of a clear legal principle presented to the Arbitrator.  Reliance solely on Professor Yaroshefsy's opinion, instead of the case law on fee forfeiture, was particularly a disregard of the law given Professor Yaroshefsky's admission that she was not an expert in fee forfeiture and that fee forfeiture is a matter of equity, not of professional responsibility (her area of expertise). (Yaroshefsky Transcript, April 21, 2021, Ex. E at 2266:8-18.)

Third, the Arbitrator ignored the authority before him that fee forfeiture should be applied for "willful" misbehavior while finding explicitly that John Balestriere did not commit willful misconduct. The Arbitrator found it plausible that John Balestriere "felt in his own mind that he was entitled to take the money in escrow to pay off the unpaid discounted fees" based on his

interpretation of the relevant contract. (Award at 38.) This is inconsistent with a fee forfeiture based on willful misconduct, and the Arbitrator's failure to provide any analysis behind this finding is further evidence that he acted in willful disregard of the relevant law.

The Arbitrator, in finding that the Firm forfeited the entirety of its more than $8.4 million success fee because it took $1.4 million out of an escrow account to pay hourly fees which, as the Arbitrator confirmed, Bernstein already owed, acted in manifest disregard of relevant law before him. The Court should modify the Award to the extent it concerns the forfeiture of the Firm's success fee, and remand to AAA for further proceedings.

## III.   THE COURT SHOULD GRANT AN ATTACHMENT UNDER FRCP 64 AND CPLR 6201 AND 7502

In addition to confirming the Award, the Court should grant the Firm an attachment against Bernstein for the full amount of the Court's judgment. The Firm is entitled to an attachment both because Bernstein is not a New York domiciliary and because Bernstein's habitual lying under oath presents a material risk that he will hide assets or take other actions that will render the Award ineffectual. Either would be sufficient as independent grounds for attachment.

Under Rule 64 of the Federal Rule of Civil Procedure, a "district court may consider any remedy for seizing property to secure satisfaction of a potential judgment that is available under state law where the federal court is located." *Shah v. Com. Bank Ob'Edinennyi Investitsionnyi Bank*, No. 09 CV 6121(HB), 2010 WL 743043, at *2 (S.D.N.Y. Mar. 4, 2010); Fed. R. Civ. P. 64 ("every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment").

### A. The Court Should Grant an Attachment Under CPLR 6201 Because Bernstein is Not a Resident of New York

The Court should grant the Firm an attachment under CPLR 6201(1), which permits attachments where the other party is "a nondomiciliary residing without the state*." ITC Ent., Ltd. v. Nelson Film Partners*, 714 F. 2d 217, 220 (2d Cir. 1983) (CPLR 6201(1) "serves to protect the plaintiff against defendant's ability to pack his bags, abandon his place of convenience within the state, and remain at his permanent residence outside the reach of New York enforcement procedure"); *Landau v. Vallen*, 895 F. 2d 888, 891 (2d Cir. 1990) (noting that New York courts "have been reluctant to undermine" the "sound purposes" behind CPLR 6201(1)). Bernstein has admitted, in this action, that he is not a New York domiciliary. (Compl. ¶ 2 (pleading that Bernstein "is a resident of the State of Florida")).

### B. The Court Should Grant an Attachment Under CPLR 7502 Because Bernstein Has a History of False Statements Under Oath, Showing a Risk That Recovery May Be Ineffectual

The Court should also grant the Firm an attachment because Bernstein's decade-long history of lying under oath, including many false statements he made at the arbitration hearing, makes it likely that Bernstein will take evasive action making the arbitration award ineffectual.

New York State law allows attachment where an arbitration award "may be rendered ineffectual." C.P.L.R. 7502(c). This applies where there exists "the possibility that an arbitration award may be rendered ineffectual in the absence of an order of attachment is sufficient" to justify an attachment—there is no need for either an "affirmative act" of concealment or even a showing of a "sinister maneuver." *Drexel Burnham Lambert Inc. v. Ruebsamen*, 139 A.D.2d 323, 327–28 (1st Dep't 1988). While the statute's language refers to pending arbitrations, it applies also to the confirmation stage. *See Vidaplan, S.A., Inc. v. Cipriani Int'l, S.A.*, No. 06-CV-4930 (KMK), 2006 WL 8461283, at *4 n.3 (S.D.N.Y. Aug. 7, 2006).

14

Bernstein's numerous misrepresentations under oath make attachment appropriate. These misrepresentations are even more egregious in light of Bernstein's false 1986 Casino Commission testimony, the only other time that the Firm is aware of Bernstein testifying under oath. There, Bernstein did not simply lie, he conspired with a colleague to tell material misrepresentations that made other attorneys' testimony appear false in order to advance his client's *separate* perjury before a governmental body. (NJ Casino Transcript at 233:2–233:8.) He did this so brazenly that his own notes contradicted his testimony; showed no remorse when confronted with his lie by investigators in the '80s; and brushed it off when confronted with it again at the arbitration hearing. (*See* NJ Casino Transcript at 234:12–234:18.) This behavior is sufficient to create a reasonable concern that Bernstein will take other steps to render the Award ineffectual, especially given that he has already sought to delay payment in this action through years of litigation.

Against that, Bernstein faces no prejudice from an attachment, particularly at this stage. This is money that he is required to pay, and any questions of success on the merits have been resolved. The only risk now is borne by the Firm, that they will be unable to collect on the Award due to Bernstein's malfeasance. Indeed, Bernstein would not need to make collections impossible in order to materially prejudice the Firm. Instead, consistent with his tactics thus far, it seems quite likely that he would at least make collection difficult in an attempt to decrease settlement value or simply waste the Firm's time and money out of spite. The Court should grant attachment against Bernstein in the amount of $12,014,673.59.

15

## **CONCLUSION**

For the foregoing reasons, the Court should confirm the arbitration Final Award, with modifications, and enter an attachment against Bernstein for the full amount of the Court's judgment, plus post-judgment interest as it accrues.

Dated:       New York, New York
            September 3, 2021

By: */s/ Jyotin Hamid*
Jyotin Hamid
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone:    (212) 909-6000
jhamid@debevoise.com

Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5421
Facsimile:    (212) 208-2613
matthew.schmidt@balestrierefariello.com

*Attorneys for Defendants Balestriere PLLC,*
*Balestriere Fariello, and John Balestriere*

16